117 T.C. No. 5

UNITED STATES TAX COURT

HAAS & ASSOCIATES ACCOUNTANCY CORPORATION, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

MICHAEL A. HAAS AND ANGELA M. HAAS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 16486-98, 16487-98.  Filed August 10, 2001.

Held:  Evidence excluded at trial may be
considered by the Court in ruling under sec. 7430,
I.R.C., on a motion for litigation costs.

Held, further, a "qualified offer" made under sec.
7430(c)(4)(E) and (g), I.R.C., does not satisfy the
requirement under sec. 7430(b)(1), I.R.C., that in
order to qualify for an award of litigation costs a
taxpayer is required to exhaust available
administrative remedies.

Held, further, under the facts of these cases,
petitioners did not exhaust their administrative

[*]    This opinion supplements our prior Memorandum Opinion, Haas
& Associates Accountancy Corp. v. Commissioner, T.C. Memo. 2000-
183.

remedies and are not eligible for an award of
litigation costs under sec. 7430, I.R.C.

William Edward Taggart, Jr., for petitioners.

Kathryn K. Vetter, for respondent.

SUPPLEMENTAL FINDINGS OF FACT AND OPINION

SWIFT, Judge:  This matter is before us on petitioners'
motion under Rule 231 for an award of $44,559 in litigation costs
and fees under the general provisions of section 7430 and under
the qualified offer rule of section 7430(c)(4)(E) and (g).

In these consolidated cases, respondent determined
deficiencies in petitioners' Federal income taxes and accuracy-
related penalties as follows:

|  | 1993 | 1994 | 1995 |
| --- | --- | --- | --- |
| Michael and Angela Haas | | | |
| Tax Deficiency | $34,416 | -- | -- |
| Sec. 6662(a) Accuracy- Related Penalty | 6,883 | -- | -- |
|  | | | |
| Haas & Associates Accountancy Corp. | | | |
| Tax Deficiency | -- | $10,833 | $7,457 |
| Sec. 6662(a) Accuracy- Related Penalty | -- | 2,167 | 1,491 |

Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

In connection with petitioners' motion for litigation costs and fees, the primary issues that we address are as follows: (1) Whether evidence excluded at trial may be considered by the Court in ruling under section 7430 on a motion for litigation costs; (2) whether a qualified offer petitioners made under section 7430(c)(4)(E) and (g) satisfies the requirement under section 7430(b)(1) that in order to qualify for an award of litigation costs a taxpayer is required to exhaust available administrative remedies; and (3) whether, under the facts of these cases, petitioners have exhausted their administrative remedies and are eligible for an award of litigation costs under section 7430.

FINDINGS OF FACT

An explanation and an analysis of the underlying facts and substantive tax issues that were involved herein are set forth in Haas & Associates Accountancy Corp. v. Commissioner, T.C. Memo. 2000-183, and are not generally restated herein.

Some of the facts relating to petitioners' motion for litigation costs and fees have been stipulated and are so found. Additional evidence material to petitioners' motion for litigation costs is set forth in affidavits and attachments filed by the parties as part of their motion papers. Included among respondent's motion papers are copies of correspondence between

the parties that were excluded from admission at the trial on the grounds of irrelevancy.

In early 1993, petitioner Michael A. Haas (Haas) severed his employment as a certified public accountant with Dean, Petrie & Haas, an Accountancy Corp. (DPH). Haas purchased from DPH the right thereafter to render accounting services to a number of former clients of DPH.

Haas then began practicing accounting in his individual capacity and through Haas & Associates Accountancy Corp. (Haas & Associates), a new accounting firm that Haas owned and incorporated as a closely held professional corporation. The former clients of DPH that Haas "took with him" from DPH were divided between Haas' individual accounting practice and the corporate accounting practice of Haas & Associates.

To effect the above separation of Haas' accounting practice from DPH, various parties including Haas signed various written contracts, a separation agreement, and covenants not to compete (the transaction documents).

In June of 1996, respondent initiated an audit of Haas and his wife's joint individual Federal income tax return for 1993. Later, respondent's audit was expanded to include Haas & Associates' corporate Federal income tax returns for 1994 and 1995. Respondent's audit related to the income tax treatment of

the above separation agreements between Haas, DPH, and the other affected parties.

During the audit, respondent's revenue agent requested, on a number of occasions and in writing, petitioners and/or petitioners' prior counsel to provide to respondent complete copies of all of the schedules and exhibits referred to in the transaction documents relating to the above separation agreement.

During respondent's audit, neither petitioners nor petitioners' prior counsel provided respondent's representatives copies of certain schedules of assets and clients that were identified and referenced in the transaction documents.

On October 21, 1997, respondent's revenue agent mailed to petitioners copies of the revenue agent's reports relating to Haas and his wife's 1993 joint Federal income tax liability and to Haas & Associates' 1994 and 1995 Federal income tax liabilities, which reports proposed the underlying tax adjustments that were decided in our Memorandum Opinion, Haas & Associates Accountancy Corp. v. Commissioner, supra.

By letter of October 28, 1997, Haas notified respondent's revenue agent that he did not agree with the adjustments proposed in the above revenue agent's reports, that the audit should be closed by respondent as unagreed, and that Haas would appeal the adjustments in court.  The relevant portion of Haas' October 28, 1997, letter to respondent is set forth below:

> I received your revenue agent's report and cover letter
> dated October 21, 1997. As we discussed, I do not
> agree with your audit report and its findings. I
> believe the tax returns in question were filed
> accurately. As per your letter, you may then close the
> case as unagreed and I will appeal the findings in
> court.

On March 18, 1998, respondent mailed to Haas and his wife and to Haas & Associates 30-day letters that reflected the same adjustments that were reflected in the above revenue agent's reports. Respondent's 30-day letters explained the protest rights available to Haas and his wife and to Haas & Associates to administratively appeal the proposed adjustments.[1]

Haas and his wife and Haas & Associates did not file a protest or request a conference with respondent's Appeals Office with regard to the above proposed adjustments in their Federal income tax liabilities.

On June 10, 1998, respondent closed his audit regarding Haas and his wife for 1993 and regarding Haas & Associates for 1994 and 1995.

---

[1] Although respondent at trial could not locate a copy of the 30-day letter mailed to Haas and his wife, and although petitioners did not produce a copy thereof, the limited evidence in the record on this point indicates that on Mar. 18, 1998, respondent mailed a 30-day letter to Haas and his wife that reflected the same adjustments that were reflected in the revenue agent's report that had been mailed to Haas and his wife on Oct. 21, 1997.

On July 17, 1998, respondent mailed to Haas and his wife and to Haas & Associates the notices of deficiency reflecting the individual and corporate adjustments set forth in the above revenue agents' reports and 30-day letters and reflecting the tax deficiencies set forth above.

On September 15, 1998, the period of limitation was scheduled to expire with respect to respondent's authority under section 6501(a) to assess a deficiency in Haas & Associates' 1994 corporate Federal income tax liability.

On September 30, 1998, under an extension which Haas and his wife had signed, the period of limitation was scheduled to expire with respect to respondent's authority under section 6501(a) to assess a deficiency in Haas and his wife's 1993 joint Federal income tax liability.

On October 9, 1998, petitioners, through new counsel, timely filed their separate Tax Court petitions –- Haas and his wife's petition with regard to the 1993 joint Federal income tax deficiency determined by respondent and Haas & Associates' petition with regard to the 1994 and 1995 corporate Federal income tax deficiencies determined by respondent.

After respondent on November 24, 1998, filed his answers, respondent's administrative files were forwarded to respondent's San Francisco, California, Appeals Office for possible settlement discussions and negotiations with petitioners' counsel.

On January 8, 1999, these consolidated cases were set for trial on June 14, 1999, in San Francisco, California.

On a number of occasions from January through April of 1999, two of respondent's Appeals officers contacted petitioners and/or petitioners' counsel, requested a meeting, and requested that copies of certain documents relating to the separation agreement (and that during respondent's audit had not been provided to respondent's representatives) be provided to respondent's Appeals Office representatives for review and consideration in connection with possible settlement discussions. Neither Haas nor petitioners' counsel met with respondent's Appeals Office representatives, and respondent's Appeals Office representatives did not receive copies of the requested documents from petitioners or from petitioners' counsel.

By letter of May 3, 1999, petitioners' counsel prepared and forwarded to respondent's trial counsel a stipulation of facts for trial. At that point, respondent's Appeals Office returned the administrative files relating to these cases to respondent's District Counsel for trial preparation.

On May 5, 1999, 6 weeks before the scheduled trial date, petitioners' counsel sent to respondent's trial counsel a written qualified offer to settle the underlying tax issues involved in these cases.

On May 15, 1999, respondent's trial counsel requested petitioners' counsel to provide complete copies of portions of the transaction documents that previously had not been provided to respondent's representatives.

On June 3, 1999, respondent rejected petitioners' qualified offer.

On June 16, 1999, the trial of the underlying substantive tax issues in these consolidated cases was held in San Francisco, California.

On June 21, 2000, we filed our Memorandum Opinion in Haas & Associates Accountancy Corp. v. Commissioner, T.C. Memo. 2000-183, and we held as follows:

(1) The $190,000 paid by Haas in connection with the separation of the accounting practice and a covenant not to compete was amortizable as an ordinary business expense deduction over 3 years as claimed by petitioners on their respective Federal income tax returns;

(2) The $63,500 paid by Haas allegedly for consulting services represented a nondeductible startup expense that required capitalization; and

(3) Because petitioners prevailed entirely on the treatment of the $190,000 and because petitioners had a reasonable basis for their claimed deduction for the $63,500 relating to the consulting services, no accuracy-related penalties were imposed on petitioners in connection with the above Federal income tax returns that petitioners had filed.

In their motion for litigation costs, petitioners seek the recovery of the following fees and costs incurred after the

mailing by respondent to petitioners of the notices of deficiency:

| Type of Fees and Costs | Total |
|---|---|
| Attorney's Fees | $43,892 |
| Filing Fees | 120 |
| Transcript Fees | 500 |
| Miscellaneous | 167 |
| Total | $44,679 |

Petitioners have submitted billing statements from petitioners' counsel regarding the above litigation costs. With one exception, the client identified on such statements and to whom the billings were mailed was "Haas & Associates" or "Haas & Associates c/o Michael A. Haas".[2] The evidence does not indicate who, as between Haas and his wife and Haas & Associates, paid these bills.

Before respondent's mailing to petitioners of the notices of deficiency, petitioners also incurred attorney's fees and other costs. Petitioners, however, in the instant motion for litigation costs and fees are not seeking recovery of any costs incurred before the mailing by respondent of the notices of deficiency.

---

[2] One billing statement dated Oct. 2, 1998, for $59 is directed to "Michael A. Haas & Angela M. Haas".

Of the total $44,559 in litigation fees and costs for which petitioners seek recovery, petitioners calculate that $39,648 was incurred after petitioners made their qualified offer.

OPINION

Under the general provisions of section 7430, based on the contention that respondent's position was not substantially justified, petitioners seek recovery of the $44,559 in litigation costs they incurred after respondent's July 17, 1998, notices of deficiency were mailed to them. Alternatively, based on their May 5, 1999, qualified offer, petitioners seek recovery of the $39,648 in litigation costs incurred after petitioners made their qualified offer. We have not previously considered the qualified offer rule of section 7430(c)(4)(E) and (g).[3]

---

[3] Sec. 7430(c)(4)(E) and (g), provides in part as follows:

SEC. 7430. AWARDING OF COSTS AND CERTAIN FEES.

(c) Definitions.--For purposes of this section--

\* \* \* \* \* \* \*

(4) Prevailing party.

\* \* \* \* \* \* \*

(E) Special rules where judgment less than taxpayer's offer.

(i) In general.--A party to a court proceeding meeting the requirements of subparagraph (A)(ii) shall be treated as the prevailing party if the liability of the
(continued...)

With regard to our prior opinion herein, respondent

---

[3](...continued)

taxpayer pursuant to the judgment in the proceeding (determined without regard to interest) is equal to or less than the liability of the taxpayer which would have been so determined if the United States had accepted a qualified offer of the party under subsection (g).

\* \* \* \* \* \* \*

(g) Qualified Offer.--For purposes of subsection (c)(4)--

(1) In general.--The term "qualified offer" means a written offer which--

(A) is made by the taxpayer to the United States during the qualified offer period;

(B) specifies the offered amount of the taxpayer's liability (determined without regard to interest);

(C) is designated at the time it is made as a qualified offer for purposes of this section; and

(D) remains open during the period beginning on the date it is made and ending on the earliest of the date the offer is rejected, the date the trial begins, or the 90th day after the date the offer is made.

(2) Qualified offer period.--For purposes of this subsection, the term "qualified offer period" means the period--

(A) beginning on the date on which the 1st letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals is sent, and

(B) ending on the date which is 30 days before the date the case is first set for trial.

acknowledges that petitioners substantially prevailed both with respect to the amounts in controversy and with respect to the most significant issues, sec. 7430(c)(4)(A)(i), and respondent acknowledges that Haas and his wife's 1993 joint Federal income tax liability is less than what it would have been under petitioners' qualified offer. Further, respondent acknowledges that each petitioner meets the net-worth and number-of-employee limitations of the Equal Access to Justice Act (EAJA), 28 U.S.C. sec. 2412(d)(1) and (2)(B) (1994). Sec. 7430(c)(4)(A)(ii).

Respondent contends, however, that because petitioners did not request an Appeals Office conference petitioners did not exhaust their available administrative remedies and that petitioners protracted the proceedings herein. Respondent also contends that the litigation costs claimed by petitioners are unreasonable and that Haas and his wife did not incur any litigation costs (i.e., that essentially all litigation costs for which recovery is sought were billed to Haas & Associates, not to Haas and his wife).

Petitioners respond that during respondent's audit examination they did not provide respondent's representatives certain requested transaction documents because the documents did not exist and that they did not protest respondent's audit adjustments and did not seek a conference with respondent's Appeals Office because there was insufficient time to do so under

the assessment periods of limitations that were about to expire. Further, petitioners contend that in light of the qualified offer they made and regardless of the fact that they did not participate in an Appeals Office conference, they should be regarded as having exhausted their available administrative remedies.

Petitioners also contend that respondent's objection to their motion for litigation costs improperly relies on evidence excluded by the Court at the trial of these cases (nontrial evidence), and petitioners ask that we strike from consideration of their motion for litigation costs such nontrial evidence.[4]

---

[4] In connection with petitioners' motion for litigation costs, petitioners and respondent raise and address the following additional issues that we do not decide:

(1) Whether a recovery by petitioners herein of litigation costs under sec. 7430 should be limited to the particular petitioner who was billed for the costs;

(2) Whether the experience of petitioners' counsel with complex business transactions would justify an enhanced rate of recovery for attorney's fees;

(3) Whether, under the qualified offer provisions of sec. 7430(c)(4)(E) and in analyzing whether the tax liabilities of petitioners pursuant to our prior opinion are equal to or less that what their tax liabilities would have been under their qualified offer, in consolidated cases involving multiple petitioners, each petitioner's respective separate portion of the tax liability under the qualified offer is to be compared with each petitioner's respective separate portion of the tax liability under the decision to be entered by the Court or is the comparison to be made as if the multiple petitioners constituted a single taxpayer; and

(continued...)

We first address petitioners' contention with regard to respondent's alleged improper use of nontrial evidence in opposing petitioners' motion for litigation costs.

Nontrial Evidence

Rules 231 and 232 anticipate that evidence may be considered in the context of a motion for litigation costs that was not part of the trial of the underlying substantive tax issues.  For example, evidence regarding the nature and amount of the fees for which recovery is sought (Rule 231(d)), the specific legal services rendered (Rule 232(d)(1)), the net worth of the taxpayer (Rule 231(b)(4)), the administrative remedies sought by the party (Rule 231(b)(5)), and delays in the proceeding (Rule 231(b)(6)), constitute evidence that would not typically have been admitted as part of a trial of the underlying substantive tax issues.

Court opinions involving claims for litigation costs often consider evidence not previously offered into evidence at the trial of the underlying substantive tax issues.  E.g., O'Bryon v. Commissioner, T.C. Memo. 2000-379 (new evidence considered

---

[4](...continued)
    (4) Whether, under the qualified offer provisions of sec.
    7430(c)(4)(E) and in analyzing whether petitioners' tax
    liabilities under our prior opinion were equal to or less
    than what their tax liabilities would have been under the
    qualified offer, the time value of money should be taken
    into account.

regarding billing statements, services rendered, and time involved).

With regard to petitioners' instant motion, we have identified no documents or other evidence that respondent has submitted to us in objecting to petitioners' motion for litigation costs that are inappropriate or inadmissible for this limited purpose. Petitioners' request that we strike certain correspondence and other evidence that was excluded at the trial is denied.

Exhaustion of Administrative Remedies and Qualified Offer

Section 7430(b)(1) provides that in order to be eligible for an award of litigation costs a taxpayer must take advantage of "available" administrative remedies. Section 7430(b)(1) provides as follows:

SEC. 7430(b). Limitations.--

(1) Requirement that administrative remedies be exhausted.--A judgment for reasonable litigation costs shall not be awarded under subsection (a) in any court proceeding unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service. Any failure to agree to an extension of the time for the assessment of any tax shall not be taken into account for purposes of determining whether the prevailing party meets the requirements of the preceding sentence.

The regulations under section 7430(b)(1) explain that taxpayers generally are not to be regarded as having exhausted

available administrative remedies where the taxpayers fail to participate in a conference with respondent's Appeals Office regarding the underlying substantive tax adjustments.  The portions of respondent's regulations under section 7430 that establish this requirement generally to participate in an Appeals Office conference are set forth below:

> Sec. 301.7430-1.  Exhaustion of administrative remedies.--(a) In general.  Section 7430(b)(1) provides that a court shall not award reasonable litigation costs in any civil tax proceeding under section 7430(a) unless the court determines that the prevailing party has exhausted the administrative remedies available to the party within the Internal Revenue Service.  This section sets forth the circumstances in which such administrative remedies shall be deemed to have been exhausted.
>
> (b) Requirements.--(1) In general.  A party has not exhausted the administrative remedies available within the Internal Revenue Service with respect to any tax matter for which an Appeals office conference is available under sections 601.105 and 601.106 of this chapter * * * unless--
>
> (i) The party, prior to filing a petition in the Tax Court or a civil action for refund in a court of the United States * * * participates * * * in an Appeals office conference; or
>
> (ii) If no Appeals office conference is granted, the party, prior to the issuance of a statutory notice * * *
>
> (A) Requests an Appeals office conference in accordance with sections 601.105 and 601.106 of this chapter; and
>
> (B) Files a written protest if a written protest is required to obtain an Appeals office conference.  [Emphasis added.]

The regulations under section 7430 provide limited exceptions (not applicable here) to the requirement that taxpayers participate in an Appeals Office conference in order to be treated as having exhausted available administrative remedies. Sec. 301.7430-1(e), Proced. & Admin. Regs.; sec. 301.7430-1(f), Examples (1), (4), (6), (9), Proced. & Admin. Regs.; see also Kaufman v. Egger, 758 F.2d 1, 3 (1st Cir. 1985); Burke v. Commissioner, T.C. Memo. 1997-127.

The recently issued temporary regulations under the qualified offer provisions of section 7430(c)(4)(E) and (g) do not provide any additional exceptions to the exhaustion-of-administrative-remedies requirement. Sec. 301.7430-7T, Temporary Proced. & Admin. Regs., 66 Fed. Reg. 726 (Jan. 4, 2001).

The legislative history of section 7430 suggests that in certain circumstances taxpayers may be relieved entirely from the exhaustion-of-administrative-remedies requirement. It states that taxpayers "are required to exhaust available administrative remedies unless the court determines that, under the circumstances of the case, such requirement is unnecessary." H. Rept. 97-404, at 13 (1982); Senate Comm. on Finance, Technical Explanation of Committee Amendment, 127 Cong. Rec. 32070 (Dec. 16, 1981).

Petitioners contend that, to the extent the above regulations make the requirement that taxpayers participate in an Appeals Office conference an absolute condition for an award of

litigation costs, the regulations exceed the statutory requirements of section 7430(b)(1).  Clearly, the regulations do not impose any such absolute condition, and we have not so held.

In 1998, Congress provided under the qualified offer rule of sections 7430(c)(4)(E) and (g) that a taxpayer may be deemed to qualify as a prevailing party under section 7430(a) and (c)(4) regardless of whether the taxpayer substantially prevailed in the proceeding or of whether the position of respondent in the proceeding was substantially justified.  Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3101(e)(1) and (2), 112 Stat. 728.[5]

The qualified offer provisions apparently arose not from any concern with the exhaustion-of-administrative-remedies requirement but with the frequent controversy over whether a party qualifies as a prevailing party under section 7430(c)(4)(A).  E.g., Corkrey v. Commissioner, 115 T.C. 366, 372-373 (2000); McIntosh v. Commissioner, T.C. Memo. 2001-144; Gibson v. Commissioner, T.C. Memo. 2001-74; Nguyen v. Commissioner, T.C. Memo. 2001-41; Livingston v. Commissioner, T.C. Memo. 2000-387 (each of which involves the "no substantial justification"

---

[5]     The qualified offer rules of sec. 7430(c)(4)(E) and (g) were made effective for costs incurred after Jan. 22, 1999, 180 days after July 22, 1998.  Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3101(g), 112 Stat. 729.  Respondent does not contend that any of the litigation costs for which petitioners herein seek recovery were incurred before the Jan. 22, 1999, effective date of the qualified offer rule.

requirement of sec. 7430(c)(4)(B)); and <u>Barbour v. Commissioner</u>, T.C. Memo. 2000-256; <u>Marten v. Commissioner</u>, T.C. Memo. 2000-186; <u>Johnson v. Commissioner</u>, T.C. Memo. 1999-127; <u>Miller v. Commissioner</u>, T.C. Memo. 1999-55; <u>Bowden v. Commissioner</u>, T.C. Memo. 1999-30 (each of which involves the "substantially prevailed" requirement); and <u>Barford v. Commissioner</u>, T.C. Memo. 1998-26 (involving the net worth requirement of sec. 7430(c)(4)(A)(ii)).

Petitioners contend that submission of their qualified offer itself constituted a part of respondent's administrative process, that their qualified offer demonstrates their good-faith participation in that process, and that at the least with respect to the $39,648 in litigation costs incurred after the date on which they submitted their qualified offer, their earlier failure to ask for an Appeals Office conference should not be fatal.

Petitioners have cited no persuasive authority in support of the contention that the existence of their qualified offer makes up for their failure to take advantage of significant administrative remedies available to them, and we have found nothing in the statutory provisions or elsewhere that suggests that the exhaustion-of-administrative-remedies requirement is to be regarded as fully satisfied because a taxpayer, 6 weeks before trial, makes a qualified offer.

Regardless of whether petitioners' qualified offer may be regarded as some level of participation by petitioners in

respondent's administrative appeal process, the fact that petitioners made a qualified offer does not excuse or make up for petitioners' failure in these cases to participate in an Appeals Office conference.

Petitioners refer us to respondent's Internal Revenue Manual, 4 Audit, Internal Revenue Manual (CCH), sec. 4461.8:(2), at 14.044, and allege that because of the imminent lapse of the assessment period of limitations (on September 15, 1998, for Haas & Associates for 1994 and on September 30, 1998, for Haas and his wife for 1993), a protest and a request by petitioners, in the spring of 1998, for an Appeals Office conference either would have been rejected by respondent or approval by respondent of the request would have been contingent on the signing by each petitioner of a further consent to an extension of the assessment periods of limitations.[6]

The record is not completely clear as to exactly what was or was not said, done, provided, and explained, and the reasons therefor, as between petitioners' and respondent's representatives during the audit of petitioners' income tax

---

[6]    Sec. 4461.8 of respondent's Manual provides in part as follows:

> (2) No income * * * tax case in which * * * [the statutory period for assessment] will expire in less than 120 days * * * will be transmitted to Appeals by the District Director unless a consent sufficiently extending the statutory period has been filed. * * * [4 Audit, Internal Revenue Manual (CCH), sec. 4461.8, at 14,044.]

returns for 1993, 1994, and 1995.  Further, the record is not completely clear as to what petitioners' legal strategy was in not participating in an Appeals Office conference.  The affidavit of petitioners' counsel alleges generally that petitioners at all times cooperated with respondent's representatives and, at each administrative level, pursued in good faith the resolution of the issues in these cases.

The fact, however, is established that no Appeals Office conference was requested on behalf of petitioners, and no affidavit has been provided (by petitioners, by petitioners' prior counsel, or by petitioners' counsel) that provides any explanation as to why an Appeals Office conference was not requested.  Statements in petitioners' legal memoranda as to why an Appeals Office conference was not requested by petitioners or by petitioners' prior counsel (without a supporting affidavit from petitioners or from petitioners' prior counsel explaining the reason therefor) constitute mere argument.

It is clear that petitioners had an opportunity to protest and to appeal respondent's proposed income tax adjustments.  In the fall of 1997, 11 months before the period of limitations was scheduled to expire, petitioners notified respondent's representatives that they did not wish to protest and participate in an Appeals Office conference; rather, they expressly and in writing requested that respondent close the audit so that they could dispute the adjustments in court.  Thereafter, petitioners'

conduct consistently reflected their intent to do just that (i.e., to resolve the matter in court). The text and the tone of the October 28, 1997, letter to respondent reflects defiance of respondent's Appeals Office conference procedure, not a conclusion by petitioners or by petitioners' prior counsel that there was inadequate time to be granted an Appeals Office conference. We also note that, from the date of respondent's March 18, 1998, 30-day letters approximately 6 months actually remained until the periods of limitations in question were scheduled to expire in mid- and late September of 1998. Thus, petitioners' argument that respondent's Manual precluded petitioners from having an Appeals Office conference is incorrect.

During the docketed, pretrial phase of these cases, petitioners' representatives chose not to meet with respondent's Appeals Office. Not until shortly before trial did petitioners' representatives, apparently for the first time, explain that certain documents referenced and identified in the transaction documents did not exist.

Where a taxpayer is offered by respondent the opportunity for an Appeals Office conference and where a taxpayer wishes to comply with the exhaustion-of-administrative-remedies requirement and to preserve his or her right to recover litigation costs, the taxpayer would be advised to request an Appeals Office conference. It is then left with respondent's Appeals Office to

decide whether the taxpayer's request will be granted in the face of any assessment period of limitations problem. If the request is denied, the taxpayer will be treated as having exhausted his or her administrative remedies. Sec. 301.7430-1(f), Example (4), Proced. & Admin. Regs.

If, under the above circumstances, a taxpayer requests and is granted an Appeals Office conference, the taxpayer would be expected to participate in good faith in the Appeals Office conference in spite of the imminent running of the period of limitations. The possible lapse of the period of limitations on assessment is respondent's problem, not the taxpayer's.

For years, many tax practitioners, on behalf of their clients, have adopted a strategy to bypass a protest of respondent's proposed audit adjustments to respondent's Appeals Office. This strategy is based on the perceived risk that filing a protest and "going to" appeals might result in new issues' being raised by the Appeals Office and on a perceived advantage of getting into court as soon as possible. See for explanations of this strategy, Saltzman, IRS Practice & Procedure, par. 9.04[1] (2d ed. 1991), and Shafiroff, Internal Revenue Service Practice & Procedure Deskbook, sec. 4.1, at 4-6 (3d ed. 2001). The possible adoption of such a strategy may explain the substance and tone of Haas' letter of October 28, 1997, and the decision of petitioners' prior and current counsel to bypass respondent's Appeals Office. In light, however, of the

exhaustion-of-administrative-remedies requirement of section 7430, if counsel wish to preserve the opportunity to seek a recovery of litigation costs, continued use of this strategy carries with it its own new risks evident in the instant cases.

We note that under section 7430(b)(1) it is provided that a taxpayer's failure to agree to an extension of the assessment period of limitations is not to be taken into account for purposes of determining whether a taxpayer exhausted available administrative remedies, and we have not done so in these cases.

On the record before us, we conclude that petitioners have not satisfied the exhaustion-of-administrative-remedies requirement of section 7430(b)(1).  Accordingly, regardless of whether petitioners satisfy the other requirements of section 7430 and regardless of petitioners' qualified offer, petitioners do not qualify herein for an award of litigation costs and fees.

Appropriate orders will be issued.