T.C. Memo. 2007-293


UNITED STATES TAX COURT


ESTATE OF CHARLES A. LIPPITZ, DECEASED, MICHAEL LIPPITZ,
ADMINISTRATOR AND RHITA S. LIPPITZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos.   35775-84, 45694-85,    Filed September 25, 2007.
              360-87,   37518-87,
              32365-88, 27448-89.


        P-Wife moved to amend the petitions to assert a
claim for innocent spouse relief under sec. 6015(c) and
(f), I.R.C.  Subsequently, P-Wife moved for summary
judgment, and R conceded.  P-Wife now seeks litigation
costs under sec. 7430, I.R.C., on the basis that she
was the prevailing party and R's position was not
substantially justified and because she submitted a
qualified offer to R and P-Wife's liability was
determined to be less than if R had accepted her offer.

        <u>Held</u>:  While P-Wife was the prevailing party, R
was substantially justified in opposing P-Wife's motion
to amend the petitions to assert a claim for innocent
spouse relief.

        <u>Held</u>, <u>further</u>, R was not substantially justified
in continuing to oppose P-Wife's claim for relief after

receiving a recommendation that P-Wife be granted relief from R's office that specializes in sec. 6015, I.R.C., cases.

Held, further, P-Wife submitted a qualified offer under sec. 7430(c)(4)(E) and (g), I.R.C., during the qualified offer period, and P-Wife's liability was determined to be less than if R had accepted the qualified offer.

Held, further, R's concession was not a settlement for purposes of sec. 7430(c)(4)(E)(ii), I.R.C.

Karen L. Hawkins, for petitioner Rhita S. Lippitz.

Paul E. Shick, for the Estate of Charles Lippitz.

James M. Klein, for respondent.

MEMORANDUM OPINION

GOEKE, Judge: This matter is currently before the Court on petitioner Rhita Lippitz's motion for the recovery of litigation costs. In relevant part petitioner[1] alleged, and respondent ultimately conceded, that she is entitled to relief under section 6015(c)[2] from any additional joint liability determined for her and her late husband Charles Lippitz for taxable years 1980 through 1985. Petitioner moves for the recovery of litigation

---

[1]For convenience, references to petitioner in the singular are to Rhita Lippitz.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

costs under section 7430 on the grounds that she is the prevailing party and because the judgment in this matter is less than the liability would have been had respondent accepted petitioner's qualified offer.[3]  Because we find that respondent was substantially justified initially in opposing petitioner's claim for innocent spouse relief, we rule in part for respondent. However, because it took too long for respondent to concede the issue and because petitioner's liability pursuant to this Court's judgment was less than her qualified offer and respondent's concession was not a settlement, we also rule in part for petitioner.

## Background

These cases involve taxable years 1980 through 1985 and relate to deficiencies determined by respondent that petitioner and her late husband, Charles Lippitz, assigned income taxable to them to various trusts formed by Mr. Lippitz while he was a practicing attorney.  A separate petition was filed for each tax year.[4]  Petitioners resided in Evanston, Illinois, at the time the petitions were filed.  The cases were ultimately consolidated

---

[3]The parties agree no hearing on petitioner's motion is necessary.

[4] Docket No. 35775-84 relates to tax year 1980; docket No. 45694-85 relates to tax year 1981; docket No. 360-87 relates to tax year 1982; docket No. 37518-87 relates to tax year 1983; docket No. 32365-88 relates to tax year 1984; and docket No. 27448-89 relates to tax year 1985.

on July 22, 2003.  For all but taxable year 1985, these cases were calendared for trial on February 12, 1990.  The cases were then continued.  Petitioners' case for taxable year 1985 was first set for trial on December 5, 1994.

Mr. Lippitz and respondent reached an "Agreement For Resolving Remaining Issues" in April 2003.  According to respondent, the only items that remained after this agreement was signed were computations, and then completion of a final stipulation of settled issues and decision documents.  The stipulation of settled issues and decision documents were not, however, filed with the Court until November 1, 2006.

It was sometime in 2003 when petitioner alleges she first became aware that respondent had asserted deficiencies in tax against her and Mr. Lippitz for tax years 1980 through 1985, and that petitions on her behalf had been filed relating to the 1980 through 1985 tax years.  According to petitioner, prior to 2003, the petitions filed on her behalf had been handled entirely by Mr. Lippitz, and at various points as many as 10 different lawyers who had entered appearances for petitioner.

After Mr. Lippitz passed away in July 2004, petitioner hired Karen Hawkins to represent her in September 2004.  Ms. Hawkins entered her appearance as counsel for petitioner in November 2004.  On January 14, 2005, petitioner filed a motion to amend the petitions to assert a claim for relief under section 6015(c)

and (f).  Respondent opposed petitioner's motion on grounds that all issues had been settled in April 2003 and that it was too late to assert such a claim.

On July 1, 2005, petitioner sent to respondent a separate letter for each of the docketed cases indicating that she was making a qualified settlement offer pursuant to section 7430(c)(4)(E) and (g).  Petitioner offered to settle each case for relief from any additional joint liability under section 6015(c).  In addition, petitioner offered to make a payment of $100 against any additional joint liability determined by respondent for each of the tax years at issue.  Respondent did not respond to these offers.

On August 4, 2005, the Court granted petitioner's motion for leave to amend, and petitioner's amended petitions were filed in each docketed case.  Respondent forwarded petitioner's file to the Internal Revenue Service Cincinnati Centralized Innocent Spouse Operation (CCISO) for evaluation of her claim.  Petitioner submitted a completed questionnaire to CCISO, and on November 10, 2005, CCISO determined that petitioner was entitled to complete relief from any deficiencies asserted in the docketed cases.  On December 5, 2005, respondent filed his answer denying petitioner's claim for relief under section 6015.

CCISO's determination letter was eventually disclosed to petitioner on April 3, 2006.  On May 2, 2006, petitioner sent

respondent another settlement offer, this time offering to settle for full relief under section 6015(c) from any additional joint liability.  In the same letter petitioner indicated to respondent that she intended to file a motion for summary judgment if respondent did not agree to the settlement.  Respondent did not agree to the settlement, and on May 24, 2006, petitioner filed a motion for summary judgment.

On July 14, 2006, respondent moved for additional time to respond to petitioner's motion and indicated an intention to concede petitioner's entitlement to the relief recommended from CCISO.  Respondent sought additional time in order to pursue a stipulation of settled issues reflective of his concession.  At this point, petitioner refused to enter into a stipulation of settled issues.  In a subsequent filing related to respondent's motion to extend time, respondent indicated to the Court that he in fact conceded the innocent spouse issue.

On September 21, 2006, this Court determined that petitioner's motion for summary judgment was moot because respondent conceded.  Petitioner now moves for the recovery of litigation costs.  Petitioner argues that for the period of July 28, 2004, to the present, she is entitled to an award of litigation fees because she is the prevailing party and respondent was not substantially justified.  For the period July 2, 2005, to the present, petitioner argues that she is entitled

to litigation fees because she is the prevailing party within the meaning of section 7430(c)(4)(E)(i), because the judgment is less than her qualified offer.

## Discussion

### A. Prevailing Party Generally

Section 7430(a) authorizes the award of reasonable litigation costs paid or incurred in a court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under the Internal Revenue Code. The taxpayer must establish that she: (1) Is the prevailing party; (2) has exhausted the available administrative remedies; (3) has not unreasonably protracted the court proceedings; and (4) has claimed litigation costs that are reasonable. Sec. 7430(a) and (b)(1), (3). The taxpayer bears the burden of proving that these requirements are met. Rule 232(e). A taxpayer is generally the prevailing party if the taxpayer substantially prevailed with respect to either the amount in controversy or the most significant issue or set of issues. Sec. 7430(c)(4)(A). Under section 7430(c)(4)(B), even if the taxpayer meets the requirements of a prevailing party under section 7430(c)(4)(A), the taxpayer will not be treated as a prevailing party if the Commissioner's position in the proceeding was substantially justified.

In general, the Commissioner's position is substantially justified if, based on all of the facts and circumstances and the legal precedents relating to the case, the Commissioner acted reasonably.  Pierce v. Underwood, 487 U.S. 552 (1988); Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988).  In other words, to be substantially justified, the Commissioner's position must have a reasonable basis in both law and fact.  Pierce v. Underwood, supra; Rickel v. Commissioner, 900 F.2d 655, 665 (3d Cir. 1990), affg. in part and revg. in part on other grounds 92 T.C. 510 (1989).  A position is substantially justified if the position is "justified to a degree that could satisfy a reasonable person."  Pierce v. Underwood, supra at 565 (construing similar language in the Equal Access to Justice Act). Thus, the Commissioner's position may be incorrect but nevertheless be substantially justified "'if a reasonable person could think it correct'".  Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 443 (1997) (quoting Pierce v. Underwood, supra at 566 n.2).

The relevant inquiry is whether the Commissioner's position was reasonable given the available facts and circumstances at the time that the Commissioner took his position, as well as any applicable legal precedents.  Id. at 443; DeVenney v. Commissioner, 85 T.C. 927, 930 (1985).  The fact that the Commissioner eventually concedes or loses a case does not

establish that his position was unreasonable.  Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Sokol v. Commissioner, 92 T.C. 760, 767 (1989).  However, the Commissioner's concession is a factor to be considered.  Powers v. Commissioner, 100 T.C. 457, 471 (1993), affd. in part, revd. in part and remanded on another issue 43 F.3d 172 (5th Cir. 1995).

Respondent argues that petitioner should not be treated as the prevailing party because respondent's position was substantially justified.  The first opportunity respondent had to take a position with respect to petitioner's claim for innocent spouse relief was in response to petitioner's motion to amend the petitions.  Respondent opposed petitioner's motion on the grounds that the matter had been litigated for almost 20 years and that all the issues in the matter had been resolved by agreement of the parties in April 2003.  Respondent argued that petitioner should be bound by that agreement.  After we allowed petitioner the opportunity to amend her petitions to assert innocent spouse relief, respondent denied petitioner's new allegations.[5]

We find respondent's initial position with respect to petitioner's claim for innocent spouse relief in opposing the motion to amend to have been substantially justified.  Reason

_____

[5]Respondent denied petitioner's new factual allegations for lack of information and denied petitioner's legal conclusions generally.

suggests that it would have been difficult for Mr. Lippitz to litigate a joint personal tax liability for nearly 20 years and not, at some point, have alerted petitioner to the fact that such a litigation was ongoing. Moreover, after learning of the outstanding litigation, petitioner took at least a year to seek leave to amend her petitions. Finally, respondent believed he had resolved all of the issues in the matter by an agreement reached in April of 2003.[6] Thus, we find respondent's position opposing petitioner's motion to amend to have been reasonable.

While respondent's position was reasonable at the start, it does not necessarily follow that respondent's position continued to be reasonable, especially when additional facts came to light. On November 10, 2005, CCISO issued a determination letter recommending that petitioner be granted innocent spouse relief. Despite CCISO's determination, respondent persisted in his denial of petitioner's claim and filed his answer to this effect. Respondent does not point to any substance, such as an error in CCISO's determination or other legal or factual basis, upon which he maintained his denial of relief. Pierce v. Underwood, supra at 565. Instead, respondent simply maintains that he needed to develop more fully the facts related to petitioner's claim.

---

[6]We note that while petitioner denied being bound by the April 2003 agreement, she did not deny her knowledge of the litigation or the agreement at the time it was reached. Instead petitioner has averred, vaguely, that she did not learn of the litigation until "sometime in 2003".

Respondent was free to do so; however in the absence of any legal or factual basis to make his position reasonable, he did so at his peril.  We find that respondent was not substantially justified in denying petitioner's claim for relief after receiving CCISO's recommendation for relief and filing his answer to petitioner's amended petitions.

B.   Qualified Offer

Under section 7430(c)(4)(E) a party shall also be treated as the prevailing party if "the liability of the taxpayer pursuant to the judgment in the proceeding (determined without regard to interest) is equal to or less than the liability of the taxpayer which would have been so determined if the United States had accepted a qualified offer of the party under subsection (g)." The qualified offer provision of section 7430(c)(4)(E) applies without regard to whether respondent's position in the matter is substantially justified.[7]  See Haas & Associates Accountancy Corp. v. Commissioner, 117 T.C. 48, 59 (2001), affd. 55 Fed. Appx. 476 (9th Cir. 2003); McGowan v. Commissioner, T.C. Memo. 2005-80.

---

[7]Sec. 7430(c)(4)(E)(iv) provides that the qualified offer subparagraph "shall not apply to a party which is a prevailing party under any other provision of this paragraph."  For the period prior to respondent's answer to the amended petitions, petitioner was not a prevailing party with respect to any of the docketed cases.  Thus, it is necessary to determine whether petitioner was a prevailing party based on having submitted a qualified offer during the period prior to respondent's answer.

A qualified offer is defined in section 7430(g)(1) as a written offer which:

> (A) is made by the taxpayer to the United States during the qualified offer period;
>
> (B) specifies the offered amount of the taxpayer's liability (determined without regard to interest);
>
> (C) is designated at the time it is made as a qualified offer for purposes of this section; and
>
> (D) remains open during the period beginning on the date it is made and ending on the earliest of the date the offer is rejected, the date the trial begins, or the 90th day after the date the offer is made.

Respondent argues that petitioner's offers were not qualified offers because they were not made during the qualified offer period and because they do not specify the amount of petitioner's liability.[8]

### 1. Qualified Offer Period

Respondent argues that petitioner's offers could not be a qualified offer because they were not made within the qualified offer period. The qualified offer period begins on the date respondent informs the taxpayer of a proposed deficiency and "ending on the date which is 30 days before the date the case is first set for trial." Sec. 7430(g). Respondent interprets this

---

[8] Respondent does not argue, and thus we do not consider, that petitioner's offer not be considered a qualified offer because petitioner failed to provide respondent with the substantiation and legal and factual arguments necessary for informed consideration of petitioner's claim for relief as required by sec. 301.7430-7(c)(4), Proced. & Admin. Regs.

provision to mean that if a case is not removed from the trial calendar more than 30 days before the case is set for trial, then a continuance will not serve to extend the qualified offer period.  Sec. 301.7430-7(c), (e), Example (13), Proced. & Admin. Regs.  Respondent thus concludes, pursuant to section 301.7430-7(e), Proced. & Admin. Regs., that because all but one of petitioner's docketed cases were not removed from the trial calendar more than 30 days before the date set for trial, the qualified offer period for those cases expired before petitioner's offers.

Petitioner, on the other hand, argues that it is possible to interpret the qualified offer period to mean 30 days before the case is first set for trial after the effective date of the enactment of section 7430(c)(4)(E) and (g).  Thus, according to petitioner, the relevant question is whether Congress intended taxpayers such as petitioner to enjoy the benefit of the qualified offer provision when their case had been calendared for trial and then continued long before the Code was amended to add the qualified offer rule.

Congress defined the qualified offer period as "ending on the date which is 30 days before the date the case is first set for trial." Sec. 7430(g)(2).  Further, Congress made section 7430(c)(4)(E) effective for costs incurred more than 180 days after enactment (July 22, 1998).  Internal Revenue Service

Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3101(g), 112 Stat. 685, 729. It is apparent Congress understood the qualified offer provision would apply to cases already pending before the Court. However, if Congress intended the qualified offer period to extend to the first time a case was set for trial after enactment, it did not say as much. We strictly construe in favor of the Government the waiver of sovereign immunity in section 7430. Simpson v. Commissioner, T.C. Memo. 1995-194; see Ardestani v. INS, 502 U.S. 129, 137 (1991).

Accordingly, the qualified offer period had expired at the time petitioner submitted her qualified offer with respect to taxable years 1980 through 1984. However, respondent concedes that petitioner submitted an offer within the qualified offer period with respect to taxable year 1985.

2.  Whether the Offer Clearly States the Amount Offered

Respondent next argues that petitioner's alleged qualified offer fails because petitioner did not clearly specify the amount being offered.[9] Section 301.7430-7(c)(3), Proced. & Admin.

---

[9]Respondent did not argue that petitioner's offer was in bad faith or lacked a reasonable relationship to the amount in issue. See August v. Delta Air Lines, Inc., 600 F.2d 699, 702 (7th Cir. 1979), affd. on other grounds 450 U.S. 346, 355 (1981) ("The plain language of * * * [Fed. R. Civ. P. 68] makes it unnecessary to read a reasonableness requirement into the Rule."). Although the plain language of sec. 7430 does not include any requirement that a taxpayer's qualified offer be made in good faith or with a reasonable relationship to the amount in controversy, respondent did not raise the issue, and we do not consider it here.

Regs., provides that a qualified offer "specifies the offered amount if it clearly specifies the amount for the liability of the taxpayer * * *. The offer may be a specific dollar amount of the total liability or a percentage of the adjustments at issue in the proceeding at the time the offer is made." The specified amount "must be an amount, the acceptance of which by the United States will fully resolve the taxpayer's liability, and only that liability * * * for the type or types of tax and the taxable year or years at issue in the proceeding." Id.

Petitioner sent respondent a letter for each of the years at issue offering to settle the case. Petitioner's offers included the following terms of settlement for each year:

> 1.  Any adjustment the Service proposes to make with respect to the [1985] joint tax return filed by taxpayer and her husband shall not be made with respect to Rhita S. Lippitz.
>
> 2.  The taxpayer shall be granted relief from any additional joint liability, in its entirety, pursuant to IRC § 6015(c).
>
> 3.  Solely for purposes of this qualified offer, Rhita S. Lippitz shall make a payment of $100.00 against any final adjustment determined by Decision or Stipulation with respect to the joint tax return for the [1985] tax year.
>
> 4.  No other adjustments shall be made in connection with the [1985] income tax return as it relates to Rhita S. Lippitz.

We find petitioner's offer to clearly state the amount offered. Petitioner offered to settle each docketed case for relief from any additional joint liability pursuant to section 6015(c). In

addition, petitioner offered to make a payment of $100 against any final adjustment determined with respect to the joint tax return for each of the years at issue.  Thus, we find clear that petitioner was offering to settle the petitions by paying $100 for each tax year and being relieved of any additional joint liability under section 6015(c).

3.  <u>Whether Respondent's Concession Is a Settlement</u>

Finally, with respect to petitioner's qualified offer, respondent argues that petitioner cannot be a prevailing party under section 7430(c)(4)(E) because this matter was resolved by a settlement.  Section 7430(c)(4)(E)(ii) provides that the qualified offer rule shall not apply to "any judgment issued pursuant to a settlement".  After petitioner filed a motion for partial summary judgment, respondent indicated to the Court that he was conceding petitioner's entitlement to innocent spouse relief under section 6015(c).[10]  Respondent argues that his concession means that judgment was entered pursuant to a settlement.

Respondent interprets section 7430(c)(4)(E)(ii) to mean that the qualified offer provision does not apply where a taxpayer's liability "is determined exclusively pursuant to a settlement".  Sec. 301.7430-7(a), Proced. & Admin. Regs.  Previously, in <u>Gladden v. Commissioner</u>, 120 T.C. 446 (2003), we addressed

_____

[10]Petitioner's motion was then denied as moot.

whether a settlement following several legal determinations precluded the recovery of litigation fees pursuant to section 7430(c)(4)(E). In Gladden, only after the parties litigated, and this Court and the Court of Appeals for the Ninth Circuit decided, legal issues integral to the adjustments at issues were the parties able to enter into a settlement agreement. We found that judgment was not entered "exclusively" pursuant to the settlement. We have not, however, previously had the opportunity to address facts such as those before us to decide whether respondent's concession of an issue constitutes a settlement for purposes of section 7430(c)(4)(E)(ii).

We apply the ordinary meaning of the term "settlement" as used in section 7430 and find that respondent's concession in this case was not a settlement. See Med. Transp. Mgmt. Corp. v. Commissioner, 127 T.C. 96, 101 (2006); Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. Pship., 507 U.S. 380, 388 (1993) ("Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning'." (quoting Perrin v. United States, 444 U.S. 37, 42 (1979))).

On the facts before us, we find respondent's concession was not a settlement. Petitioner first submitted her qualified offer to respondent on July 1, 2005. This offer would have resolved the asserted deficiencies against petitioner for an increase in

her liability of $100 for each of the taxable years at issue. Respondent did not respond to petitioner's offer. Later, after receiving the recommendation of respondent's CCISO office that she was entitled to innocent spouse relief, petitioner again submitted a settlement offer to respondent. This time, petitioner offered to settle the case for full relief from the asserted liabilities under section 6015(c). In the same letter, petitioner informed respondent that in the absence of an agreement resolving the matter, she intended to move for summary judgment. Respondent did not accept petitioner's offer. Instead, respondent offered to settle the matter if the agreement included a statement by petitioner that she had no interest in the assets of the trusts.

True to her word, in the absence of respondent's accepting her offer, petitioner filed a motion for partial summary judgment. On the day after respondent was to file a response to petitioner's motion, respondent instead filed a motion for additional time in which he expressed his intent to concede. In the light of petitioner's multiple offers to settle and eventual dispositive motion, we find respondent's concession occurred too late to be treated as a settlement.

This is not to say that in all cases a concession could not be a settlement. We can imagine scenarios where a concession would be difficult to differentiate from an agreement to settle.

However, that is not the case here. It was not until after petitioner actively litigated the issue--by filing a motion for summary judgment--that respondent conceded she was entitled to innocent spouse relief. We find this akin to a concession after trial.

We do not believe Congress intended to grant respondent the latitude to wait until just before the resolution of a dispositive motion, or the end of a trial to concede a matter and still benefit from the settlement exclusion of section 7430(c)(4)(E). Section 7430 was designed to emulate Rule 68 of the Federal Rules of Civil Procedure and encourage settlement by imposing litigation costs on the party unwilling to settle. Gladden v. Commissioner, supra at 450. Respondent was unwilling to settle this case on the terms and at the times offered by petitioner. Respondent cannot sidestep the consequences of such refusal by conceding the issues after petitioner had effectively presented the case for disposition by the Court.

C. Net Worth Requirements

Respondent also argues that petitioner has not established that she meets the net worth requirements required to claim litigation fees. To qualify for an award of litigation costs, the prevailing taxpayer cannot have a net worth that exceeded $2 million at the time the petition was filed. Sec. 7430(c)(4)(A)(ii); 28 U.S.C. sec. 2412(d)(2)(B) (2000).

Petitioner has filed affidavits averring that her net worth was less than $2 million at the time her amended petitions were filed as well as when the original petitions were filed.  We find petitioner's submissions to be credible, and respondent has offered no evidence to contradict petitioner's statements.  Accordingly, we are satisfied that petitioner meets the net worth requirements.

D.    Whether Petitioner Protracted the Proceedings

Respondent argues that petitioner is not entitled to an award of litigation costs because she unreasonably protracted the proceedings.  Sec. 7430(b)(3) ("No award for reasonable * * * costs may be made * * * with respect to any portion of the * * * court proceeding during which the prevailing party has unreasonably protracted such proceeding.").  Respondent faults petitioner for not complying with a summons originally dated October 5, 1987.  Respondent attempted to resurrect the summons in January 2006, in a letter to petitioner.

According to respondent's records, the summons issued to petitioner was served by leaving a copy at the abode of Mr. Lippitz.  The other evidence before the Court suggests that before 2003, petitioner was not in a position to play an active role in responding to the summons in question.  Accordingly, we cannot find fault in petitioner's failure to comply with the 20 year old summons where there is no evidence that petitioner even

knew of the summons until January 2006. We find that petitioner has not unreasonably protracted the proceedings.

E.    Reasonable Litigation Costs

Finally, respondent argues that the fees claimed by Ms. Hawkins are unreasonable. We agree with respondent that no departure from the statutory rates is called for in this case.

The award of attorney's fees under section 7430 is generally limited to the statutory rate[11] "unless the court determines that * * * a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate." Sec. 7430(c)(1)(B)(iii).

Ms. Hawkins claims that an upward departure to her billing rate of $350 an hour is warranted because of her extensive experience dealing with innocent spouse relief and because the 10 lawyers who had previously represented petitioner were unable to obtain such relief. While we do not question that Ms. Hawkins has a wealth of experience that in some case might justify an upward departure from the statutory rate, this is not such a case.

We find nothing particularly complex about the law or the

---

[11]An award for fees incurred in 2004 and 2005 is limited to $150 per hour. Rev. Proc. 2003-85, sec. 3.33, 2003-2 C.B. 1184, 1190; Rev. Proc. 2004-71, sec. 3.35, 2004-2 C.B. 970, 976. An award of fees incurred in 2006 is limited to $160 an hour. Rev. Proc. 2005-70, sec. 3.36, 2005-2 C.B. 979, 985.

facts of petitioner's claim. Ms. Hawkins moved to amend the petitions and asserted a claim for innocent spouse relief under section 6015(c). Ms. Hawkins, on behalf of petitioner, sent respondent two offers to settle the case and asked that petitioner's claim be evaluated by CCISO. Upon respondent's failure to settle the case and upon receipt of CCISO's determination, Ms. Hawkins drafted and filed a motion for partial summary judgment arguing that, in accordance with CCISO's determination, there was no evidence to suggest that petitioner had any actual knowledge of the erroneous items. Respondent was ultimately unable to discover facts supportive of his position that petitioner did have knowledge of the items giving rise to the deficiency. Thus, while Ms. Hawkins achieved a successful result for her client, there is nothing that convinces this Court that a similar result would not also have been achieved by an attorney with a more limited knowledge of the Internal Revenue Code, generally, and section 6015, specifically. Accordingly, we find no reason to depart from the statutory rate.

Further, as respondent points out, it appears Ms. Hawkins billed her client for associate time at $125 an hour but seeks recovery of fees for her associate at $150 an hour. We find that petitioner is only entitled to recover fees for the amount actually incurred for the associate's time.

F.  <u>Conclusion</u>

We find that petitioner is entitled to an award of litigation costs for all of the docketed cases from the date respondent filed his answer to the amended petitions, as petitioner was the prevailing party, and respondent was not substantially justified.  Petitioner is also entitled to an award of litigation costs for the period before respondent filed his answer, on the basis that petitioner submitted a qualified offer for taxable year 1985, and petitioner's liability for 1985 was found by this Court to be less than if respondent had accepted this offer.  We note, however, that the record is insufficient to distinguish petitioner's litigation costs related to the 1985 tax year from those related to the 1980 through 1984 tax years.  Petitioner will bear the burden of demonstrating which costs incurred between the qualified offer and respondent's answer should be allocated to the 1985 tax year.  Additionally, petitioner is entitled to an award of the costs associated with the current motion.  See <u>Commissioner, INS v. Jean</u>, 496 U.S. 154, 161-162 (1990).

To reflect the foregoing,

<u>An appropriate order will be</u>

<u>issued</u>.