115 T.C. No. 29


UNITED STATES TAX COURT


RAYMOND P. CORKREY AND MEGAN B. FLOM-CORKREY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18760-97.                    Filed October 24, 2000.


        R received from the Social Security Administration
(SSA) inaccurate information showing that, during 1987,
P received certain compensation in the amount of
$35,100 for teaching a scuba diving course.  In fact, P
received only $351 for such compensation.  P did not
file a tax return for 1987 or 1988.  On the basis of
the information from the SSA, R issued a notice of
deficiency to P, to which notice P did not respond.  R
assessed the tax determined to be due and attached a
lien to P's bank account.  During 1996, P was unable to
obtain a home loan because of the tax lien and
outstanding balances due to R.  P hired an accountant
to prepare P's tax returns for 1987 and 1988.  R
received P's 1987 and 1988 tax returns on Jan. 9, 1997.
P filed his 1987 return as married filing jointly, but
P's ex-wife did not sign the return and refused to sign
a declaration that P's 1987 return was true and
accurate.  R would not process the return without P's
ex-wife's signature on the return or the declaration.
In addition to the problems with P's 1987 return, P's
1988 tax return contained significant errors.  P

eventually hired an attorney to assist him. On Apr. 14, 1997, P provided R with all of the information needed to process P's return. On May 30, 1997, R issued refund checks to P for the 1987 and 1988 taxable years. On June 2, 1997, R abated for reasonable cause additions to tax for late filing and negligence that had been assessed for 1987 and 1988. Pursuant to sec. 7430, I.R.C., P made an administrative claim for costs associated with the preparation and filing of P's 1987 and 1988 tax returns.

Held: Costs associated with filing and correcting P's tax returns were incurred in providing R with all the information necessary to process P's returns. P is not entitled to recover such costs because, until P provided to R all information relevant (including a properly signed tax return) to processing P's tax return, R's position was substantially justified. See sec. 301.7430-5(h) Example (3), Proced. & Admin. Regs.

Held: P is not entitled to recover administrative costs incurred after P provided all relevant information to R because R processed P's return within a reasonable period of time after receiving such information.

Phillip J. Vecchio, for petitioners.

Robert E. Marum, for respondent.

WELLS, Chief Judge: The instant case involves petitioners' claim for administrative costs of $5,377.22 pursuant to section 7430.[1] Some of the facts have been stipulated and are so found.

_____

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue. Sec. 7430 of the Internal Revenue Code was amended by

(continued...)

Petitioners resided in Nassau, New York, when they filed their petition.

### FINDINGS OF FACT

During 1987 and 1988, petitioner Raymond P. Corkrey (petitioner) and his former wife Gunn Corkrey (petitioner's ex-wife) were estranged. They divorced in 1990. Petitioner failed to file timely Forms 1040 for the years 1987 and 1988. Petitioner's gross income for each of the years 1987 and 1988 exceeded the filing requirements. On May 12, 1991, petitioner married his present wife, Megan B. Flom-Corkrey (petitioner's wife).

The Andover Service Center's (Center) record of wages earned by petitioner during 1987 showed that he earned wage income of $35,100 from Burnt Hills-Ballston Lake Central School District for teaching a scuba diving course. The Center's record of petitioner's wages was based upon information received from the Social Security Administration (SSA). Employers send Form W-2 information for each employee to the SSA along with copies to the individual employee, indicating the employee's total wages, income tax withholding, and Social Security taxes withheld for

---

[1](...continued)
the Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. 104-168, secs. 701-704, 110 Stat. 1452, 1463-1464 (1996), which is effective with respect to proceedings commenced after July 30, 1996. See TBOR 2 secs. 701(d), 702(b), 703(b), and 704(b), 110 Stat. 1463-1464. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.

the year.  The SSA extracts and uses the Form W-2, Wage and Tax Statement, information received from the employer and then sends the information electronically to the Internal Revenue Service (Service).  The Service relies on the information from the SSA when it compares information received from third parties.  The Service used the information from the SSA to create the Automated Substitute for Return (ASFR) Account Transcript for petitioner for 1987.  The amount of income petitioner actually earned for teaching the course was $351.  The Center's records also indicated that petitioner earned $23,401 from the Minneapolis Postal Data Center and $4,248 from the Veterans Administration.

The Center sent petitioner five computer-generated notices requesting that he file a 1987 return, which notices were sent on August 21, 1989, October 16, 1989, February 26, 1990, April 9, 1990, and May 21, 1990.  Petitioner failed to respond to any of the notices.  On September 19, 1990, the Center prepared a substitute for return for petitioner for 1987.[2]  In the substitute for return procedure, the Service establishes accounts for taxpayers who fail to file a return when the Service anticipates that additional activity will take place, such as assessments, payments, and credits.  As to petitioner's account,

---

[2]     When a taxpayer has not filed a return, the Substitute For Return Unit notifies the taxpayer of any proposed deficiency in tax based on the payor information in its possession without any assumed deductions.  See sec. 6020(b).

such activity took place; i.e., the issuance of the statutory notice of deficiency, making of tax assessments, and application of withholding credits. Petitioner did not respond to the statutory notice covering taxable year 1987.

On May 27, 1991, the Center issued petitioner a first notice of balance due for the 1987 taxable year. The first notice of balance due explained the calculations used, the income producing the assessment, and the balance due of $31,275.28. Normally, if a response is not received for the first notice, the Center's computer system subsequently issues other notices, indicating that there is a balance due. The Center sent petitioner three additional notices on July 1, August 5, and September 9, 1991, all showing a balance due for 1987 of $31,275.28. The Center received no response or payments from petitioner for the notices of balance due, and on October 14 and November 18, 1991, issued notices of intent to levy on the balance due of $31,275.28. On September 8 and 30, 1992, the Center received payments from petitioner for his 1987 taxable year in the amounts of $5.23 and $21.39, respectively.

On November 30, 1990, the Center established an account for petitioner for his 1988 taxable year by preparing a substitute for return. A statutory notice for petitioner's 1988 taxable year was issued, and petitioner did not respond. On September 2, 1991, the Service assessed a $2,239 deficiency in tax for

petitioner's 1988 taxable year.  Also on September 2, 1991, the Service issued to petitioner the first notice of balance due for his 1988 taxable year in the amount of $2,187.83.  On October 7, and November 11, 1991, the Center sent petitioner additional notices of balance due for his 1988 taxable year, both showing $2,187.83 due.  On December 16, 1991, the Center sent petitioner a notice of intent to levy for his 1988 taxable year.

During early 1992, Revenue Officer Bonnie MacKay informed petitioner that he needed to file returns for 1987 and 1988 within 30 days and that she would send to him the necessary records and information as soon as possible.  One of the records that Ms. MacKay sent petitioner was a copy of the ASFR Account Transcript for 1987, dated April 26, 1991.  On December 11, 1996, the Service served a levy in the amount of $1,745.88 on petitioners' joint bank account.  The levy was released on December 16, 1996.

After December 17, 1996, petitioner mailed returns to the Service for his 1987 and 1988 taxable years because the tax liens arising from the unpaid assessments for those years prevented him from qualifying for a mortgage.  The Center received petitioner's returns on January 9, 1997.  A letter from petitioner's accountant, David M. Wojeski, dated October 24, 1996, pointing out the error in the wage income that petitioner received from the school for 1987 ($351 instead of $35,100), was attached to

petitioner's 1988 return.

On March 12, 1997, Revenue Agent Anne Marie Meuse of the Center's Substitute For Return Unit received petitioner's case file, containing his 1987 and 1988 returns, along with correspondence from his representative, Phillip J. Vecchio. Upon receiving those materials, Ms. Meuse analyzed them for discrepancies and problems. For the 1987 return, Ms. Meuse found an issue concerning filing status and a discrepancy between the Form W-2 from the school and the information received by the Service. The Form W-2 attached to the return indicated $351 in wages and the payor information received through the SSA indicated $35,100 in wages, so Ms. Meuse assumed there was a decimal point error. Ms. Meuse located the number for the school on the Form W-2 to verify the information, because she wanted the school to correct its Form W-2 information and submit the correction to the Service, not just to the taxpayer.

In order to process petitioner's 1987 return, Ms. Meuse required petitioner's ex-wife's signature. Petitioner had filed the 1987 return as married filing jointly, and Ms. Meuse could not process the return without both petitioner's and his ex-wife's signatures. Because of the problems with petitioner's account, Ms. Meuse contacted the accountant having a power of attorney on file, Mr. Wojeski, but he no longer represented petitioner and did not want to receive or supply any information

regarding petitioner. When Ms. Meuse checked the computer system to see whether Mr. Vecchio had a power of attorney which would enable her to discuss petitioner's case with him, she discovered he had no power of attorney. Ms. Meuse called Mr. Vecchio to let him know that she needed a power of attorney before she could give him any information about petitioner. The same day that Ms. Meuse received petitioner's 1987 return, Ms. Meuse mailed to petitioner, for petitioner's ex-wife to sign under penalties of perjury, a declaration that, to her knowledge, the information on the return was true. The declaration was mailed to petitioner because Mr. Vecchio did not have a power of attorney on file.

On March 12, 1997, Mr. Vecchio told Ms. Meuse that he would, by facsimile copy, send a power of attorney later that day, but Ms. Meuse did not receive it. Four or five days later, she again contacted Mr. Vecchio, saying that she needed the power of attorney in order to give him information. Three or four days later, Ms. Meuse again called Mr. Vecchio, who insisted that he had already sent a power of attorney to her. When she did not receive the power of attorney, she called him again and asked him to resend the power of attorney, which she received.

Once Ms. Meuse received Mr. Vecchio's power of attorney, she informed him that she could not process the 1987 return without petitioner's ex-wife's signature. She also told him that if she did not receive it within 10 days, she would have to change the

filing status from married filing jointly to married filing separately.

The problem with the 1988 return concerned the number of dependents claimed. Ms. Meuse's normal practice was to look at dependents claimed on a return, and, if she found that dependents were already claimed by another person, she disallowed the dependents claimed by the second person. When Ms. Meuse reviewed petitioner's 1988 return, she discovered that two of the three dependents had already been claimed. Ms. Meuse disallowed the two exemptions and adjusted the return accordingly. On April 14, 1997, Mr. Vecchio informed Ms. Meuse that petitioner's ex-wife would not sign the declaration. At that point, Ms. Meuse had the information necessary to proceed with processing petitioner's case. Ms. Meuse informed Mr. Vecchio that she would process the 1987 return, make the tax adjustments taking into consideration the Form W-2 and married filing separately changes, and, for 1988, disallow the two exemptions. Because the Service had already made assessments, Ms. Meuse made the above tax adjustments herself.

Generally, it takes 3 weeks for information to post to an account after it has been entered into the Service's system. Refunds are issued about 4 weeks from the time the adjustments are made. Ms. Meuse testified that it took the normal period of time from the time she received all the information necessary to

process petitioner's returns until the time petitioner received his refunds.  She also testified that, if the problem with the Form W-2 information from the school showing a discrepancy in wages and FICA wages had been brought to an examiner's attention, the examiner would not have abated the tax without a tax return's having been filed.  She stated that, even if the mistake had not been petitioner's fault, the Service would have needed an original signed tax return, because he was still required to file a tax return for his 1987 taxable year.

On May 30, 1997, the Service issued to petitioner refund checks in the amounts of $451.39 and $226.97, respectively, for his 1987 and 1988 taxable years.[3]  On June 2, 1997, the Service, in response to correspondence dated March 24, 1997, abated for reasonable cause, on the basis of a documented medical condition, additions to tax for late filing and negligence that had been assessed for petitioner's 1987 and 1988 taxable years.  Pamela Auer, a revenue agent in respondent's technical unit that processed Congressional inquiries, including correspondence from

---

[3]     The record indicates that the refunds arose as a consequence of (1) respondent's application of the refunds that petitioners were due for the taxable years 1992, 1994, and 1995, against the liability that respondent determined for the taxable year 1987, and (2) petitioner's earlier payment of $2,022.55 against his tax liability for 1988.

petitioner and Mr. Vecchio to a Congressman, processed petitioner's penalty abatement.

On July 29, 1997, petitioners filed a claim for administrative costs with respect to petitioner's 1987 and 1988 taxable years. The claimed administrative costs for petitioner's attorney cover a period from December 12, 1996 through June 2, 1997, and for his accountant from September 30, 1996 through April 30, 1997. On August 11, 1997, the Service denied the claim for administrative costs.[4]

OPINION

Petitioners seek administrative costs pursuant to section 7430. Originally, section 7430 only authorized the Court to award reasonable litigation costs. See Tax Equity & Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 292, 96 Stat. 324, 572-574; Gustafson v. Commissioner, 97 T.C. 85, 87 (1991). Congress, however, broadened the scope of section 7430 by amending section 6239 of subtitle J (the "Omnibus Taxpayer Bill of Rights") of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, 102 Stat. 3342, 3743-3746. In proceedings commenced after November 10, 1988, the Court is

---

[4] After petitioners filed their petition with the Court, respondent moved to dismiss petitioner Megan B. Flom-Corkrey for lack of jurisdiction. However, respondent was subsequently permitted to withdraw the motion to dismiss when petitioners demonstrated that respondent had filed liens against petitioners' joint bank accounts and applied petitioners' joint refunds against petitioner's liabilities.

authorized to award reasonable administrative costs. See TAMRA sec. 6239(d), 102 Stat. 3746. Despite the amendment, cases arising pursuant to the pre-amended statute are persuasive in deciding whether a taxpayer is entitled to a stand-alone claim of administrative costs, such as the instant case. See, e.g., McWilliams v. Commissioner, 104 T.C. 320 (1995); Gustafson v. Commissioner, supra (citing cases decided under prior law).

A decision for administrative costs incurred in connection with an administrative proceeding may be awarded under section 7430(a) only if a taxpayer: (1) Is the "prevailing party", (2) did not unreasonably protract the administrative proceeding, and (3) claimed reasonable administrative costs. See sec. 7430(a), (b)(3), and (c). A taxpayer must satisfy each of the respective requirements in order to be entitled to an award of administrative costs pursuant to section 7430. See Rule 232(e).

To be a prevailing party, the taxpayer must substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented and satisfy the applicable net worth requirement. See sec. 7430(c)(4)(A). A taxpayer, however, is not a prevailing party if the Commissioner can establish that the Commissioner's position in

the administrative proceedings was substantially justified.  See sec. 7430(c)(4)(B).

The Commissioner's position is substantially justified if it is "justified to a degree that could satisfy a reasonable person" and has a "reasonable basis in both law and fact".  Pierce v. Underwood, 487 U.S. 552, 565 (1988) (interpreting similar language in the Equal Access to Justice Act, 28 U.S.C. sec. 2412 (1988)); see also Maggie Management Co. v. Commissioner, 108 T.C. 430, 443 (1997).  A position has a reasonable basis in fact if there is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  See Pierce v. Underwood, supra at 564-565.  Accordingly, in deciding whether the Commissioner acted reasonably, this Court must "consider the basis for the Commissioner's legal position and the manner in which the position was maintained."  Wasie v. Commissioner, 86 T.C. 962, 969 (1986).

The fact that the Commissioner eventually loses or concedes the case is not conclusive as to whether the taxpayer is entitled to an award of administrative costs.  See Sokol v. Commissioner, 92 T.C. 760, 767 (1989); Wasie v. Commissioner, supra at 968-969.  It remains, however, a relevant factor to consider in deciding the degree of the Commissioner's justification.  See Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Powers v. Commissioner, 100 T.C. 457, 470, 472 (1993), affd. in

part and revd. in part 43 F.3d 172 (5th Cir. 1995); <u>Dartmouth Clubs, Inc. v. Commissioner</u>, T.C. Memo. 2000-167.

Petitioner seeks recovery of administrative costs associated with the preparation of his returns by his accountant as well as costs attributable to his attorney's attempts to correct deficiencies in the delinquently filed returns.  However, petitioner failed to file timely a required tax return for 1987, even though his gross income exceeded the filing requirement. The information the Service received from the SSA showed that petitioner owed substantial tax.  Petitioner had not presented all relevant information under his control to the appropriate Service personnel prior to his filing the required return.  Even when petitioner did file his return, he still had not presented all relevant information to allow Ms. Meuse to process his return because petitioner's ex-wife had not signed a declaration that petitioner's 1987 return was true and accurate.  See sec. 301.7430-5(h), <u>Example</u> (<u>3</u>), Proced. & Admin. Regs.

Petitioners contend that the Service is not substantially justified if the erroneous assessment is predicated upon a disputed "information return."  Petitioners rely on <u>Cole v. Commissioner</u>, T.C. Memo. 1996-375.  The taxpayer in <u>Cole</u> filed a timely 1991 return reporting $2,427.25 of other income.  The Service's information showed that she had been paid $4,147.50. After the Service issued a 30-day letter, the taxpayer informed

the Commissioner that she disagreed with the proposed change, and she mailed a letter outlining her position. The Commissioner replied to the letter but did not address her contentions. The taxpayer wrote again requesting that her situation be addressed.

The Service issued a statutory notice to the taxpayer after it received information from the third party payor supporting the $4,147.50 figure. After the taxpayer filed a petition in the Tax Court and the Commissioner filed an answer, the Commissioner obtained the correct information from the third party payor confirming the taxpayer's assertions. The parties filed a stipulated decision with the Court in which the taxpayer substantially prevailed as to this issue. Later, the taxpayer filed a motion for award of reasonable administrative and litigation costs and fees.

The Court held that the taxpayer was entitled to recover administrative and litigation costs. The Court concluded that the Commissioner was not substantially justified because, at the time the Commissioner issued the statutory notice and filed an answer, the Commissioner had an insufficient basis in fact to determine that the taxpayer received $4,147.50 of other income.

The instant case is distinguishable from Cole v. Commissioner, supra. Petitioner did not file a timely return for 1987 or 1988, nor did he correspond with the Service or advise the Service of a dispute prior to the issuance of the notices of

deficiency.  Petitioner failed to respond to the notices of deficiency and to five separate requests from the Center, as well as a request by Ms. MacKay during early 1992, that petitioner file a return for 1987.  Moreover, during early 1992, petitioner received from Ms. MacKay information clearly showing the discrepancy in wage income from the school.  For nearly 4 years thereafter petitioner took no action to remedy the situation.

Petitioner also relies in his brief on language from Portillo v. Commissioner, 988 F.2d 27 (5th Cir. 1993), revg. T.C. Memo. 1992-99, which was discussed in Cole v. Commissioner, supra.  The instant case is distinguishable from Portillo, however, because petitioner failed to file a Form 1040 for 1987.  See Parker v. Commissioner, 117 F.3d 785, 786-787 (5th Cir. 1997) (distinguishing Portillo on the ground that the taxpayer had not filed a return).  We note that, had petitioner timely filed his 1987 return or acted promptly in response to any of the notices sent from the Service Center, the entire matter could have been disposed of without issuing a statutory notice.  See Uddo v. Commissioner, T.C. Memo. 1998-276; McDaniel v. Commissioner, T.C. Memo. 1993-148.[5]

---

[5]    In McDaniel v. Commissioner, T.C. Memo. 1993-148, we stated that whenever there is a factual determination, the Commissioner is not obliged to concede a case until the Commissioner receives the necessary documentation to prove the taxpayer's contentions. We also stated that after the Commissioner receives the proper documentation, a reasonable period of time must be given to
(continued...)

Petitioner, however, failed to file a return and failed to act promptly.

In the instant case, most of the expenses petitioner seeks to recover are associated with preparing or correcting petitioner's 1987 and 1988 tax returns. Those costs were incurred to provide respondent with the information necessary to make adjustments to petitioner's accounts and to fulfill petitioner's basic obligations as a taxpayer. Petitioner was required to file a tax return and until he properly filed that return, respondent was not in a position to abate the assessments and penalties and make the proper adjustments to his account. Indeed, until petitioner provided such information, the Service was substantially justified in relying upon wage information received from the school, the Minneapolis Postal Data Center, and the Veterans Administration. See sec. 301.7430-5(h), Example (3), Proced. & Admin. Regs. Accordingly, we hold that petitioner's costs incurred in preparing and correcting petitioner's tax returns are not recoverable pursuant to section 7430. The Service, moreover, took no more than a reasonable amount of time to process petitioner's refunds after he filed his return. Consequently, we hold that any costs associated with procuring a refund after petitioner provided the information

[5](...continued)
analyze the documents and make adjustments accordingly.

necessary to process the refund are not recoverable by petitioners.

To reflect the foregoing,

Decision will be entered

for respondent.