T. C. Memo. 2012-349

UNITED STATES TAX COURT

ELIZABETH H. RATCLIFFE a.k.a. ELIZABETH H. HIATT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11024-11.                    Filed December 18, 2012.

<u>Richard Eugene Marsh, Jr.</u>, for petitioner.

<u>Amy Dyar Seals</u>, for respondent.

MEMORANDUM OPINION

GUY, <u>Special Trial Judge</u>:  This matter is before the Court on petitioner's

motion for litigation and administrative costs filed pursuant to section 7430 and

**[*2]** Rule 231.[1]  Respondent filed a response opposing petitioner's motion, and petitioner filed a reply to respondent's response.  As discussed in detail below, we conclude that respondent's position in these proceedings was substantially justified, and consequently we will deny petitioner's motion.

Background

The following facts, which are not in dispute, are derived from the pleadings, petitioner's motion and related papers, and the parties' stipulation of facts and exhibits attached thereto.  At the time the petition was filed, petitioner resided in North Carolina.

Petitioner married Ian Ratcliffe in 2005 and resided with him in a home in North Carolina (Mr. Ratcliffe's residence) that he had acquired before their marriage.  On June 30, 2008, Mr. Ratcliffe and petitioner cosigned as "grantors" a deed of trust pledging Mr. Ratcliffe's residence as security for a $35,000 home equity line of credit with Beneficiary Branch Banking & Trust Co.  Exhibit A to the deed of trust, a legal description of the encumbered property, states that the property is "CURRENTLY OWNED BY IAN K. RATCLIFFE AND ELIZABETH H. RATCLIFFE".

[1]Unless otherwise specified, Rule references are to the Tax Court Rules of Practice and Procedure, and section references are to the Internal Revenue Code, as amended.

**[*3]**  Petitioner and Mr. Ratcliffe separated in July 2008, and petitioner moved out of Mr. Ratcliffe's residence.  Petitioner and Mr. Ratcliffe were granted a judgment of divorce on September 22, 2009, and agreed that  Mr. Ratcliffe's residence remained his sole and separate property.

On October 16, 2009, petitioner purchased a home and began using it as her principal residence.  Petitioner subsequently filed an amended Federal income tax return for 2008, treating the purchase as if it had occurred on December 31, 2008, and claiming an $8,000 first-time homebuyer credit pursuant to section 36 (FTHBC or credit).  The Internal Revenue Service (IRS) processed petitioner's amended return for 2008 and issued a refund to her of $8,000.

In 2010 respondent initiated an examination of petitioner's amended return for 2008.  During the examination process, petitioner was assisted by an attorney who provided the IRS with a copy of Form HUD-1, Settlement Statement, prepared in connection with petitioner's purchase of her new residence, a copy of her divorce decree, and related information.

On March 14, 2011, respondent mailed to petitioner a notice of deficiency for 2008 disallowing the $8,000 FTHBC and determining an accuracy-related penalty of $1,600 under section 6662(a).

**[*4]**   On March 31, 2011, petitioner executed a retainer agreement and hired Richard E. Marsh, Jr., as her legal counsel.  Petitioner paid Mr. Marsh an initial retainer fee of $1,000, and he prepared and filed with the Court a timely petition for redetermination challenging the notice of deficiency.  The petition included allegations that respondent had erred in determining that petitioner was not eligible for the FTHBC and that petitioner did not qualify as a first-time homebuyer as defined in section 36.  On June 23, 2011, respondent filed an answer to the petition, denying that he had erred as petitioner alleged.

On June 28, 2011, Appeals Team Manager Janet Burke sent a letter to petitioner indicating that her case had been forwarded to respondent's Office of Appeals (Appeals Office) for an independent review.  By letter dated July 5, 2011, Appeals Officer Dawn Spagnola invited petitioner to contact her for purposes of arranging a telephone conference.  Mr. Marsh responded to Appeals Officer Spagnola by letter dated July 12, 2011, providing her with copies of petitioner's settlement statement and divorce decree.  Mr. Marsh stated in his July 12, 2011, letter that petitioner was not married on the date she purchased her new principal residence and that she had never owned a home until she purchased her new residence on October 16, 2009.  In a letter to Appeals Officer Spagnola dated July 26, 2011, Mr. Marsh offered to provide any additional information that she

**[*5]** might need to resolve the matter and requested an Appeals Office conference. By letter dated September 2, 2011, Mr. Marsh again requested a meeting with Appeals Officer Spagnola.

On September 16, 2011, the Appeals Office closed the matter and returned petitioner's case to respondent's area counsel to prepare for trial. On October 14, 2011, respondent's counsel Elizabeth M. Bux wrote a letter to Mr. Marsh stating in relevant part:

> The issue in this case is the application of the first time home buyer credit. Your client is not eligible for this credit because she owned property within the three years prior to the purchase of her home on October 16, 2009. * * * Her name is on a deed of trust dated June 30, 2008. Attached is a copy of this deed of trust which contains Ms. Ratcliffe's signature. Her divorce does not reset her previous property ownership.

Ms. Bux also invited Mr. Marsh to contact her for purposes of scheduling an initial conference.

On December 13, 2011, Mr. Marsh sent a letter to Ms. Bux quoting portions of legal treatises discussing North Carolina real estate law and various provisions of the North Carolina General Statutes. Mr. Marsh asserted that petitioner signed the deed of trust as a grantor in June 2008 because "it was important for the bank to demand the joinder of * * * [petitioner] in order to make sure that if * * * [Mr. Ratcliffe] predeceased her, she did not claim her statutory rights [to an elective

[*6] life estate] under North Carolina G.S. 29-30, which would have been given precedence over the bank's claim." Mr. Marsh asserted that petitioner's interest in Mr. Ratcliffe's residence was "non-possessory" and was wholly contingent on Mr. Ratcliffe's predeceasing her.

After reviewing North Carolina statutory provisions and related caselaw, and obtaining approval from the Commissioner's National Office, respondent conceded that petitioner never held a present ownership interest in Mr. Ratcliffe's residence, that she otherwise qualified for the FTHBC, and she properly elected to treat the purchase of her principal residence as having been made on December 31, 2008, in accordance with section 36(g).

On February 24, 2012, the Court entered a stipulated decision in this case indicating there is no deficiency in income tax due from, nor overpayment due to, petitioner for the taxable year 2008 and that she is not liable for an accuracy-related penalty for the taxable year 2008.

On March 13, 2012, petitioner and Mr. Marsh executed an amendment to their original retainer agreement. The amendment stated in relevant part:

1. The matter of the Tax Controversy with the IRS is now resolved favorably to the Client.

2. The Firm has incurred time charges and expenses in the total amount of $16,809.84.

[*7]  3. The client has made a deposit of $1,000.00 with respect to the charges in 2, above.

4. The parties agree that the Firm shall, on behalf of the Client, make a claim against the IRS for legal fees as provided by law.

5. Client shall cooperate fully with the presentation of such claim, including testifying if necessary.

6. Client shall make a second deposit of $1,000.00 against the amount of the charges and expenses due, which shall be immediately earned by Firm.

7. Firm shall refund to Client the $2,000.00 deposit, out of the first dollars of any fees and expenses awarded by the Court.

8. Firm shall receive any excess received from the Court above $2,000.00 and shall apply such to the outstanding balance in 2, above.

9. Assuming Client and Firm perform their obligations under items 1-8 above, Firm shall not seek any deficiency from Client if the fees awarded, less the refund to Client, does not total the full amount in 2, above.

10. Except as modified above, the Agreement remains in full force and effect.

On March 19, 2012, petitioner filed the motion pending before the Court, prompting the Court to vacate and set aside the stipulated decision.[2] In accordance

---

[2]Rule 232(f) (disposition of motion for reasonable administrative and litigation costs shall be included in the decision entered in the case); see sec. 7430(f)(1) .

**[*8]** with section 7430(c)(1)(B)(iii), which generally sets a maximum rate of $125 per attorney hour, petitioner asserts that she is entitled to an award of $5,281.25 for attorney's fees and $192.34 for out-of-pocket expenses, for a total of $5,473.59.

## Discussion

Pursuant to section 7430(a), a prevailing party may be awarded reasonable administrative and litigation costs incurred in any administrative or court proceeding brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty. The term "prevailing party" means any party (other than the United States or a creditor of the taxpayer) which has substantially prevailed with respect to the amount in controversy or the most significant issue or set of issues and meets the net worth requirements of 28 U.S.C. sec. 2412(d)(2)(B). See sec. 7430(c)(4)(A). A party meeting these requirements shall not be treated as the prevailing party, however, if the United States establishes that its position in the proceeding was substantially justified. Sec. 7430(c)(4)(B).

To qualify for an award, a prevailing party must also have exhausted the administrative remedies available to such party within the IRS, and no award may be made with respect to any portion of a proceeding during which the prevailing

**[\*9]** party unreasonably protracted such proceeding. Sec. 7430(b)(1), (3). The parties agree that petitioner substantially prevailed in this case and satisfies the applicable net worth requirements. The parties likewise agree that petitioner exhausted the administrative remedies available to her and did not unreasonably protract the proceedings.

The parties disagree, however, whether respondent's position in the proceeding was substantially justified within the meaning of section 7430(c)(4)(B). The parties also disagree as to the amount of fees and expenses that may be awarded to petitioner in the light of the amendment to her fee agreement with Mr. Marsh.

To establish that his position was substantially justified, the Commissioner must show that his position was "'justified to a degree that could satisfy a reasonable person'" or that his position has a "'reasonable basis both in law and fact.'" Swanson v. Commissioner, 106 T.C. 76, 86 (1996) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)) (interpreting a similar legal standard in the Equal Access to Justice Act, 28 U.S.C. sec. 2412 (1988)). A position has a reasonable basis in fact if there is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Corkrey v. Commissioner, 115 T.C. 366, 373 (2000) (citing Pierce, 487 U.S. at 564-565). In determining whether the

**[\*10]** position of the Commissioner was substantially justified, we must consider the basis for the legal position and the manner in which the position was maintained. Corkrey v. Commissioner, 115 T.C. at 373; Wasie v. Commissioner, 86 T.C. 962, 968-969 (1986). The relevant inquiry is whether the Commissioner knew or should have known that his position was invalid at the onset. Nalle v. Commissioner, 55 F.3d 189, 191 (5th Cir. 1995), aff'g T.C. Memo. 1994-182; Polz v. Commissioner, T.C. Memo. 2011-117, 2011 WL 2150035. A significant factor to be considered is the information available to the Commissioner at the time he established his position in the case and whether relevant information was presented to him. Sec. 301.7430-5(c)(1), Proced. & Admin. Regs. The Commissioner's decision to concede a case is not conclusive that the taxpayer is entitled to an award under section 7430, but a concession is a factor that may be considered. Wilfong v. United States, 991 F.2d 359, 364 (7th Cir. 1993); Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 443 (1997); Sokol v. Commissioner, 92 T.C. 760, 767 (1989).

The "position of the United States" is evaluated in two stages of the case: the administrative proceeding and the court proceeding. See Huffman v. Commissioner, 978 F.2d 1139 (9th Cir. 1992), aff'g in part, rev'g in part T.C. Memo. 1991-144. The Appeals Office did not issue a notice of decision to

[*11] Petitioner before the notice of deficiency was issued, and, therefore, respondent's position in the administrative proceeding was established as of March 14, 2011-- the date of the notice of deficiency. Sec. 7430(c)(7)(B); Fla. Country Clubs, Inc. v. Commissioner, 122 T.C. 73, 77 (2004), aff'd, 404 F.3d 1291 (11th Cir. 2005). Respondent's position in the Court proceeding was that taken in his answer to the petition filed June 23, 2011. See sec. 7430(c)(7)(A); Maggie Mgmt. Co. v. Commissioner, 108 T.C. at 442.

Respondent determined in the notice of deficiency and in his answer to the petition that petitioner was not eligible for the FTHBC. Respondent relied upon alternative theories for disallowing the FTHBC. First, respondent concluded that petitioner did not qualify for the FTHBC because she elected to treat the purchase of her new residence as if it had occurred on December 31, 2008, at which time she was still married to Mr. Ratcliffe. Respondent also relied upon the deed of trust that petitioner and Mr. Ratcliffe executed in 2008 as evidence that she held a present ownership interest in a principal residence during the three-year period preceding the purchase of her new residence.

Congress added section 36 and the FTHBC to the Internal Revenue Code as part of the Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, sec. 3011(a), 122 Stat. at 2888. Section 36 provides a refundable tax credit to a

[*12] first-time homebuyer of a principal residence equal to the lesser of 10% of the purchase price of the residence or $8,000. Sec. 36(a) and (b)(1). The term "first-time homebuyer" is defined in section 36(c)(1) as "any individual if such individual (and if married, such individual's spouse) had no present ownership interest in a principal residence during the 3-year period ending on the date of the purchase of the principal residence to which * * * [section 36] applies." See Foster v. Commissioner, 138 T.C. 51, 53 (2012). Section 36(g) permitted a taxpayer purchasing a principal residence after December 31, 2008, and before December 31, 2009, to accelerate the credit by electing to treat the purchase as having been made on December 31, 2008, for purposes of section 36 (other than subsections (c) and (f)(4)(D)).

During the course of the IRS examination and the litigation that ensued, the question arose whether petitioner had held a present ownership interest in a principal residence during the three-year period ending on October 16, 2009--the date she purchased her new principal residence. The ownership issue fully blossomed when respondent discovered the deed of trust, executed in 2008, which stated that petitioner was a co-owner of Mr. Ratcliffe's residence.

In general, the existence and nature of a property interest is determined under State law, while Federal law determines how a particular property interest is

**[*13]** treated for purposes of taxation under the Internal Revenue Code.  See, e.g., Mitchell v. Commissioner, 131 T.C. 215, 218 (2008).  Consistent with this principle, the parties looked to North Carolina law for purposes of resolving petitioner's case.

At common law, dower entitled a widow to a life interest in one-third of the land of which her deceased husband had been seised at any time during marriage and which was inheritable by the issue of husband and wife.  See Estate of Herrmann v. Commissioner, 85 F.3d 1032, 1035 n.1 (2d Cir. 1996), aff'g T.C. Memo. 1995-90.  The estate of dower was abolished in North Carolina in 1959, see N.C. Gen. Stat. sec. 29-4 (2011), and was replaced with various statutory provisions that entitle a surviving spouse to choose between accepting whatever is provided for the spouse in the deceased spouse's will or taking a statutorily fixed percentage of the deceased spouse's estate.  In this regard, N.C. Gen. Stat. sec. 29-30(a), provides in relevant part:

> (a)  In lieu of the intestate share provided in G.S. 29-14 or 29-21,     *
> * * the surviving spouse of an intestate or the surviving spouse who * *
> * [dissents from the will of a testator] shall be entitled to take as  * * *
> [his or her] intestate share * * * a life estate in one third in value of all
> the real estate of which the deceased spouse was seised and possessed
> of an estate of inheritance at any time during coverture, except that real
> estate as to which the surviving spouse:

[*14]       (1)    Has waived the surviving spouse's rights by joining with the other spouse in a conveyance thereof, or

            (2)    Has release[d] or quitclaimed the surviving spouse's interest therein in accordance with G.S. 52-10, or

            (3)    Was not required by law to join in conveyance thereof in order to bar the elective life estate, or

            (4)    is otherwise not legally entitled to the election provided in this section.

In sum, pursuant to N.C. Gen. Stat. sec. 29-30, so long as petitioner remained married to Mr. Ratcliffe, she would have an interest in his residence (and other real estate) in the event he predeceased her. Specifically, in the event of that contingency, petitioner would be entitled to elect to take a life estate in a portion of the value of Mr. Ratcliffe's real estate holdings.

N.C. Gen. Stat. sec. 39-7(a) (2011)[3] provides that a waiver of an elective life estate provided for in N.C. Gen. Stat. sec. 29-30 must be included in any

---

[3]N.C. Gen. Stat. sec. 39-7(a) (2011) provides:

> (a) In order to waive the elective life estate of either husband or wife as provided for in G.S. 29-30, every conveyance or other instrument affecting the estate, right or title of any married person in lands, tenements or hereditaments must be executed by such husband or wife, and due proof or acknowledgment thereof must be made and certified as provided by law.

**[*15]** conveyance or other instrument affecting the right or title of a married person in real estate.

Respondent contends that his position in this case, whether measured from the date of the notice of deficiency or the date respondent filed his answer to the petition, was substantially justified. Respondent maintains that (1) although the FTHBC was enacted in July 2008, by early 2011 the IRS was still in the process of finalizing FTHBC policy positions and coordinating those policies with IRS personnel across the country, and (2) during the period in question there was no meaningful body of caselaw interpreting section 36, particularly with regard to the proper application of the FTHBC provisions in cases involving various marital property rights under State law. Respondent avers that the facts in petitioner's case, including her election to claim the credit in a taxable year in which she was married to Mr. Ratcliffe, and questions related to the nature of her interest in Mr. Ratcliffe's residence, required coordination with the Commissioner's National Office to ensure consistency and uniformity in the treatment of similarly situated taxpayers. Respondent maintains that he acted reasonably by engaging with Mr. Marsh in exploring these issues, investigating the nature of petitioner's interest in Mr. Ratcliffe's residence, and arriving at a basis for timely settlement of the case.

**[\*16]** Petitioner counters that respondent failed to adhere to published guidance indicating that petitioner was both eligible for the FTHBC and entitled to claim the credit for taxable year 2008 (despite the fact that she was married to Mr. Ratcliffe during that year).[4] Petitioner cites an article titled "First-Time Homebuyer Credit: Scenarios" appearing on the IRS Web site at http://www.irs.gov/newsroom/article/0,,id=206294,00.html and Internal Revenue Manual pt. 4.19.15.41.1 (Nov. 29, 2011) in support of her position. Petitioner also argues that respondent should have discovered the deed of trust and conducted the legal analysis necessary to conclude that she did not have a present ownership interest in Mr. Ratcliffe's residence before the notice of deficiency was issued to her.

---

[4]Petitioner's reply states:

> During Marsh's representation of Petitioner with the Appeals Office, based upon information and belief, there were a number of similarly situated cases involving taxpayers who were "First Time Homebuyers" in 2009 who were recently divorced, had complied with Section 36 as written by Congress and as instructed by the Service in its informal "Q&A" guidance as set forth in paragraph 11, *supra*, but whose refunds were disallowed because the election to take the refund in 2008 meant that the refund would be issued for a year in which they were married.

It is worth noting that this statement generally is consistent with respondent's assertion that he was attempting to coordinate his position on this issue and ensure consistent treatment for similarly situated taxpayers.

**[\*17]** Several factors lead us to conclude that respondent's position disallowing the FTHBC was substantially justified. In so holding, we look to both the legal and factual underpinnings of respondent's position.

At the time petitioner's amended return for 2008 was under examination, section 36 was still a relatively new provision. During the examination and thereafter, legitimate questions arose as to whether petitioner qualified as a first-time homebuyer as defined in section 36(c)(1) and whether she could take advantage of section 36(g) and accelerate the credit by reporting it on an amended return for 2008. Specifically, respondent was uncertain whether petitioner held a "present ownership interest" in Mr. Ratcliffe's residence, a term that is not defined in section 36. Moreover, the issue was (and is) a novel one--there is no caselaw discussing the meaning of the term "present ownership interest" in the context of marital property rights, such as the right to an elective life estate that petitioner held under North Carolina law. The disposition of petitioner's case was further clouded by the discovery of the deed of trust and the unambiguous statement in that document that she was a co-owner of Mr. Ratcliffe's residence.

Although respondent eventually conceded that petitioner was eligible for the FTHBC, that concession is not determinative as to whether she is entitled to an award under section 7430. See Sokol v. Commissioner, 92 T.C. at 767.

**[*18]** Considering the complexity of the applicable statutory provisions, the facts underlying petitioner's case, and the novel issues presented, we conclude that respondent's position disallowing the credit was reasonable and represented a good-faith effort to enforce the internal revenue laws. See Estate of Wall v. Commissioner, 102 T.C. 391, 394 (1994) (Commissioner's position substantially justified where case presented issue of first impression, position was not contrary to any published decision, and position did not lack colorable justification); Rowe v. Commissioner, T.C. Memo. 2002-136, 2002 WL 1150776 (Commissioner's position in a complex case applying the relatively new legal principles of section 6015(f), without the benefit of legislative history, was substantially justified); Livingston v. Commissioner, T.C. Memo. 2000-387, 2000 WL 1862561 (Commissioner was entitled to take a reasonable amount of time to verify and concede taxpayer's claim for spousal relief under section 6015(c) considering that the provision was newly enacted and raised novel and complex interpretative issues). Stating the proposition slightly differently, we cannot say that respondent's position conflicted with the "clear and unequivocal" language of the

**[*19]** statute so as to render the position unreasonable. See Nalle v. Commissioner, 55 F.3d at 193.[5]

We reject petitioner's assertion that respondent should have discovered the deed of trust and conceded that she was entitled to the FTHBC before issuing the notice of deficiency. Deductions and credits are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction or credit claimed. Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Although the record shows that petitioner was cooperative and responsive to the examining agent's request for information, there is no indication that she offered independent corroboration of her assertion that she did not own an interest in Mr. Ratcliffe's residence, nor did she offer to explain the genesis of the deed of trust or the nature of her interest in Mr. Ratcliffe's residence before Ms. Bux raised the matter with Mr. Marsh in her letter dated October 14, 2011.

Petitioner's argument that respondent failed to adhere to the published guidance regarding the proper application of section 36 is equally unpersuasive.

---

[5]The question whether petitioner ever held a present ownership interest in Mr. Ratcliffe's residence is not before the Court in this case, and we express no opinion with regard to that issue.

[*20] We have reviewed the IRS articles and materials that petitioner cites and find that they are not controlling with regard to the finer points of law presented in her case.

In the light of Mr. Marsh's detailed response to Ms. Bux's letter, we conclude that respondent's decision to concede the case was both timely and reasonable considering all of the circumstances.  See Sokol v. Commissioner, 92 T.C. at 765 (upon receiving relevant information the Commissioner is allowed sufficient time to resolve factual issues and decide whether to concede).

In accordance with the foregoing, we hold that respondent's position in this case was reasonable and substantially justified under section 7430(c)(4)(B).  It follows that petitioner is not the prevailing party within the meaning of section 7430, and we will deny petitioner's motion.[6]

To reflect the foregoing,

An appropriate order and decision will be entered.

---

[6]Because we conclude that respondent's position was substantially justified, we do not address respondent's argument that petitioner incurred legal fees of only $2,000, as opposed to the higher amount requested in her motion.