T.C. Memo. 2015-92

UNITED STATES TAX COURT

BONNIE J. ANGLE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 29418-11, 435-12L.　　　　　Filed May 11, 2015.

<u>William E. Taggart, Jr.</u>, for petitioner.

<u>Audra M. Dineen</u>, for respondent.

[*2]                          MEMORANDUM OPINION

LARO, Judge:  Currently before the Court is petitioner's motion for reasonable litigation costs pursuant to section 7430[1] and Rule 231.  Petitioner resided in California at the time she filed her petition.

Background

On April 15, 1996, petitioner and her now deceased husband, Cloyd Angle, filed a joint Federal income tax return for 1995.  Petitioner's 1995 tax liability has given rise to no fewer than four cases, three of which we describe in turn.[2]

I.      Deficiency Case

On September 26, 2001, respondent issued to petitioner and Mr. Angle a notice of deficiency for 1995.  On December 6, 2001, petitioner and Mr. Angle

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The fourth case pertained to respondent's collection efforts for petitioner and Mr. Angle's excise tax liability under sec. 1491 for 1995.  On August 13, 2012, petitioner filed a petition in this Court seeking review of respondent's collection activities, which was assigned docket No. 20240-12L.  On September 12, 2013, the Court entered a stipulated decision setting forth the parties' agreement that respondent's determinations regarding the collection of petitioner's excise tax liability would not be sustained.

**[\*3]** filed a petition with this Court, which was assigned docket No. 13718-01 (deficiency case).

Mr. Angle died in May 2004, and petitioner became the administrator of his estate. On June 28, 2005, the parties entered into a stipulation of settled issues in the deficiency case in which petitioner agreed to all of the adjustments in the notice of deficiency, with the exception of a capital gain adjustment for the sale of certain stock. During that case petitioner also attempted to argue for relief from joint and several liability under section 6015. However, because petitioner did not formally raise her section 6015 claim until trial, the Court denied her motion to amend the petition to raise that claim. On June 23, 2005, the capital gain issue was tried before Judge Holmes. On October 5, 2009, Judge Holmes issued an opinion finding that petitioner and Mr. Angle recognized gain from their sale of stock. Estate of Angle v. Commissioner, T.C. Memo. 2009-227. On February 18, 2010, the Court entered a decision against petitioner and Mr. Angle for a deficiency of $2,805,619 and a penalty under section 6662 of $561,123.80. On July 8, 2010, respondent assessed the amounts set forth in the decision.

II. Innocent Spouse Case

On June 18, 2010, following the entry of decision in the deficiency case, petitioner filed Form 8857, Request for Innocent Spouse Relief, requesting relief

[*4] from her 1995 tax liability pursuant to section 6015 and claiming that she signed the return under duress. On November 5, 2010, the Internal Revenue Service (IRS) Cincinnati Centralized Innocent Spouse Operations (CCISO) preliminarily denied petitioner relief determining that she had materially participated in the deficiency case and citing res judicata. Petitioner filed a statement of disagreement on December 15, 2010. On January 11, 2011, petitioner sent the IRS Office of Appeals (Appeals) a letter offering to settle the innocent spouse case for $1,000. On October 6, 2011, Appeals issued a final determination sustaining CCISO's preliminary determination.

On December 23, 2011, petitioner filed a petition in this Court for review of Appeals' final determination. The petition was assigned docket No. 29418-11 (innocent spouse case), which is one of the two cases currently before the Court. Although respondent initially asserted res judicata as an affirmative defense, respondent later conceded it and sent the case back to CCISO for consideration of the merits of petitioner's claim. On July 31, 2012, CCISO determined that the 1995 return was a valid joint return and that petitioner was not eligible for innocent spouse relief because she had actual knowledge of the deficiency under section 6015(c) and because she did not satisfy the requirements under section

[*5] 6015(b) or (f). On October 10, 2012, respondent filed a status report with the Court, informing the Court of CCISO's determination.

III.    Collection Due Process Case

Meanwhile, on February 10, 2011, following the entry of decision in the deficiency case, respondent issued a final notice of intent to levy to collect petitioner's 1995 tax liability. Petitioner timely requested a collection due process (CDP) hearing in response to the levy notice. On February 22, 2011, petitioner received a notice of Federal tax lien with respect to her tax liability for 1995. Petitioner timely requested a CDP hearing in response to the lien notice. Appeals Officer Alan Owyang conducted petitioner's CDP hearing by telephone on November 30, 2011. On December 8, 2011, respondent issued a notice of determination sustaining respondent's collection actions with respect to both the lien and the levy. On January 5, 2012, petitioner filed a petition in this Court seeking review of respondent's notice of determination. That case was assigned docket No. 435-12L (CDP case), which is the second case currently before the Court. On April 18, 2012, petitioner filed a motion to consolidate the innocent spouse and CDP cases, which the Court granted on May 21, 2012.

[*6] IV.    Resolution of Innocent Spouse and CDP Cases

The innocent spouse and CDP cases were scheduled for trial on October 21, 2013.  Meanwhile, on July 16, 2013, respondent deposed petitioner regarding her knowledge of the deficiency items and her duress claim.  After the deposition, respondent requested additional information, which petitioner provided on August 11 and 20, 2013.  On the basis of the deposition and the new information, respondent determined that the 1995 return was a valid joint return but petitioner was entitled to relief under section 6015(c).  On September 27, 2013, respondent informed petitioner of this determination and faxed draft decision documents reflecting a settlement.  On September 28, 2013, petitioner acknowledged receipt of the decision documents but refused to sign them because they did not provide for litigation costs.

On October 21, 2013, when these cases were called for trial, the parties informed the Court that all underlying issues had been settled and that only the issue of litigation costs remained.[3]  The Court continued the case until November 18, 2013, to give the parties an opportunity to resolve the litigation cost issue.  On November 18, 2013, the parties informed the Court that a resolution could not be

---

[3]Respondent conceded at trial that the granting of sec. 6015 relief rendered the collection action moot.

**[\*7]** reached. That same day, the Court issued an order directing petitioner to file a motion for costs under section 7430 by January 17, 2014.

## Discussion

Currently before the Court is petitioner's motion for litigation costs pursuant to section 7430. Under section 7430(a), a prevailing taxpayer in a court proceeding against the United States may be awarded "reasonable litigation costs incurred in connection with such court proceeding." The decision whether to award attorney's fees under section 7430 is within a trial court's sound discretion. See Pac. Fisheries, Inc. v. United States, 484 F.3d 1103, 1106 n.2 (9th Cir. 2007); Huffman v. Commissioner, 978 F.2d 1139, 1143 (9th Cir. 1992), aff'g in part, rev'g in part T.C. Memo. 1991-144.

## I.     Legal Standard

In order for this Court to award reasonable litigation costs under section 7430, certain requirements must be met. The record must show the following.

(1) The moving party filed a timely motion for reasonable litigation costs. Rule 231(a). In an order dated November 18, 2013, the Court ordered petitioner to file a motion for costs by January 17, 2014. While petitioner's motion was dated January 17, 2014, it was not filed with the Court until January 21, 2014, the next business day. We excuse petitioner's delay, however, because it was minimal.

**[*8]**  (2)  The moving party did not unreasonably protract the court proceedings. Sec. 7430(b)(3).  Respondent concedes that petitioner did not unreasonably protract the proceedings.

(3)  The moving party exhausted any administrative remedies available to him or her within the IRS.  Sec. 7430(b)(1).  Respondent concedes that petitioner has exhausted the administrative remedies available to her.

(4)  The moving party has a net worth that did not exceed $2 million at the time the petition was filed in the case.  Sec. 7430(c)(4)(A)(ii).  Respondent contends that petitioner has not established that she meets the net worth requirement because the only proof she submitted was "her own self-serving statements" in her affidavit.  On the basis of our holding below that petitioner is not a prevailing party, however, we need not resolve this fact-intensive issue.

(5)  The moving party is a prevailing party in the Court proceeding.  Sec. 7430(a), (c)(4)(A), (B), (E).  Respondent disputes that petitioner is a "prevailing party".  For the reasons set forth below, we agree with respondent.

(6)  The amount of costs claimed is reasonable.  Sec. 7430(a), (c)(1). Respondent challenges the reasonableness of petitioner's claimed costs.  On the

**[\*9]** basis of our holding that petitioner is not a prevailing party, however, we need not decide this issue.

These six requirements are in the conjunctive; each requirement must be met before this Court may order an award of litigation costs to a taxpayer under section 7430. See Beecroft v. Commissioner, T.C. Memo. 1997-23 (citing Minahan v. Commissioner, 88 T.C. 492, 497 (1987)). Because she is not a prevailing party, we decline to award petitioner litigation costs.

II.     Prevailing Party Under the Qualified Offer Rule

Petitioner argues that she is entitled to recover litigation costs under the qualified offer rule, see sec. 7430(c)(4)(E) and (g), because her January 11, 2011, letter was a qualified offer.[4] Petitioner bears the burden of proving that she meets the qualified offer requirements. See Rule 232(e).

Section 7430(c)(4)(E)(i) provides:

> A party to a court proceeding * * * shall be treated as the prevailing party if the liability of the taxpayer pursuant to the judgment in the proceeding (determined without regard to interest) is equal to or less than the liability of the taxpayer which would have been so determined if the United States had accepted a qualified offer of the party [as defined] under subsection (g).

---

[4]Petitioner does not argue on brief that she is a prevailing party under sec. 7430(c)(4)(A). We therefore deem any such argument to be conceded. See Mendes v. Commissioner, 121 T.C. 308, 313-314 (2003) (holding that arguments not addressed in brief may be considered abandoned).

**[\*10]** Under the qualified offer rule of section 7430(c)(4)(E) and (g), a taxpayer may be deemed to be a prevailing party regardless of whether the taxpayer substantially prevailed in the proceeding or of whether the Commissioner's position in the proceeding was substantially justified. Haas & Assocs. Accountancy Corp. v. Commissioner, 117 T.C. 48, 59 (2001), aff'd, 55 Fed. Appx. 476 (9th Cir. 2003).

###### A.     No Qualified Offer in the CDP Case

Section 7430(g) defines a "qualified offer" as a written offer which:  (1) is made by the taxpayer to the United States during the qualified offer period--i.e., the period between the date the first letter of proposed deficiency is sent and 30 days before the date the case is first set for trial; (2) specifies the offered amount of the taxpayer's liability (determined without regard to interest); (3) is designated at the time it is made as a qualified offer for purposes of this section; and (4) remains open during the period beginning on the date it is made and ending on the earliest of the date the offer is rejected, the date the trial begins, or the 90th day after the date the offer is made.

Respondent concedes that petitioner's January 11, 2011, letter was a qualified offer as defined by section 7430(g) with respect to the innocent spouse case.  However, respondent argues that petitioner's January 11, 2011, letter was

**[*11]** not a qualified offer with respect to the CDP case for two reasons. First, the January 11, 2011, letter did not refer to any CDP case or collection action. Second, respondent sent the first collection notice in connection with the CDP case on February 10, 2011, approximately a month after petitioner's January 11, 2011, letter. We find that petitioner's offer was not made during the qualified offer period with respect to the CDP case because it was made before the first letter that respondent sent in connection with the CDP case. Accordingly, we conclude that the January 11, 2011, letter is not a qualified offer with respect to the CDP case.

Since petitioner's January 11, 2011, letter is a qualified offer with respect to the innocent spouse case, however, she may be entitled to reasonable litigation costs incurred in connection with the innocent spouse case if all other qualified offer requirements are satisfied.

B.    <u>Settlement Exception to the Qualified Offer Rule</u>

Even where the taxpayer makes a qualified offer under section 7430(g), the qualified offer rule does not apply to "any judgment issued pursuant to a settlement". Sec. 7430(c)(4)(E)(ii)(I); <u>see also</u> sec. 301.7430-7(a), Proced. & Admin. Regs. ("An award of reasonable administrative and litigation costs under the qualified offer rule only includes those costs * * * attributable to the

**[*12]** adjustments * * * that were included in the court's judgment other than by reason of settlement.").

In Knudsen v. Commissioner, T.C. Memo. 2013-87, at *16-*17, we explained that recovery under the qualified offer rule is limited to issues actually decided by the court:

> The regulations also define the word "judgment" for purposes of the qualified offer rule to mean "the cumulative determinations of the court concerning the adjustments at issue and litigated to a determination in the court proceeding", sec. 301.7430-7(a), Proced. & Admin. Regs., and set forth by example that an issue that a taxpayer disputes in court but ultimately concedes or settles is outside the meaning of the word "judgment" because the issue "was not determined by the court, but rather by concession or settlement", sec. 301.7430-7(e), Example (1), Proced. & Admin. Regs.

See also T.D. 9106, 2004-1 C.B. 384, 385 (stating that a commentator had recommended that the final regulations permit the recovery of fees attributable to adjustments that were settled, but the final regulations declined to adopt his comment). Moreover, a contrary rule would run afoul of the spirit of the qualified offer rule. "The qualified offer rule was enacted to encourage settlements. Requiring the government to pay administrative and litigation costs with respect to issues resolved exclusively pursuant to a settlement would be contrary to that goal." Id.

- 13 -

[*13] During the pendency of the innocent spouse and CDP cases, respondent conceded both cases. On September 27, 2013, respondent sent petitioner draft decision documents offering her full relief from her 1995 income tax liability under section 6015(c). Moreover, on October 21, 2013, petitioner's counsel represented to the Court that the sole issue remaining was the issue of attorney's fees.

In Knudsen, we held a concession to be a "settlement" within the meaning of section 7430. Knudsen v. Commissioner, at *12-*16 ("The [qualified offer] regulations draw no distinction between a settlement and a concession[.]").[5] Whether a concession constitutes a settlement under section 7430(c)(4)(E)(ii)(I) does not rest entirely on the timing of the Commissioner's concession but instead depends on all the facts and circumstances. Knudsen v. Commissioner, at *13. Moreover, "the parties' failure to communicate the concession in a formalized

---

[5]In Estate of Lippitz v. Commissioner, T.C. Memo. 2007-293, we held that a concession was not a settlement where the Commissioner continued to oppose the taxpayer wife's claim for innocent spouse relief after receiving CCISO's recommendation in favor of relief and where the Commissioner did not concede his position until a dispositive motion was pending. Both parties argue that Estate of Lippitz is distinguishable from the current cases, and we agree. In these cases, CCISO recommended denying relief after considering the merits of petitioner's claim. In addition, respondent conceded these cases after receiving additional information that petitioner had submitted and not as a tactical litigation ploy. Therefore, Estate of Lippitz does not control our analysis.

[*14] stipulation of settled issues carries little weight in our analysis because the filing of a written agreement is not necessary to the finding of a settlement." Id. at *15 (citing Johnston v. Commissioner, 122 T.C. 124, 129, aff'd, 461 F.3d 1162 (9th Cir. 2006)).

Under the facts and circumstances, we find that respondent's concessions in the innocent spouse and CDP cases constitute settlements under section 7430(c)(4)(E)(ii)(I). The parties did not submit any issue to the Court for its determination on the merits. Moreover, petitioner's acceptance of respondent's concession is evidenced by her counsel's statement to the Court that all outstanding issues had been resolved.[6] Because these cases were settled, the

---

[6]In Dorchester Indus. Inc. v. Commissioner, 108 T.C. 320, 330 (1997), aff'd without published opinion, 208 F.3d 205 (3d Cir. 2000), we held: "A settlement is a contract and, consequently, general principles of contract law determine whether a settlement has been reached." A contract requires "an objective manifestation of mutual assent to its essential terms", and mutual assent is typically established through an offer and an acceptance. Id. "The parties to a contract need not manifest their mutual assent explicitly but may do so implicitly through their actions or inactions as viewed in the light of the surrounding facts and circumstances." Knudsen v. Commissioner, T.C. Memo. 2013-87, at *14. Moreover, "'[a]ssent to the terms of a settlement agreement can be implied from the circumstances, and conduct inconsistent with a refusal of the terms raises a presumption of assent upon which others may rely.'" Ahern v. Cent. Pac. Freight Lines, 846 F.2d 47, 49 (9th Cir. 1988) (quoting Wong v. Bailey, 752 F.2d 619, 621 (11th Cir. 1985)).

**[*15]** qualified offer rule does not apply, and petitioner is not a prevailing party. See sec. 7430(c)(4)(E)(ii)(I).

In reaching our holdings, we have considered all arguments made, and to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order and decision will be entered in docket No. 29418-11.

An appropriate order and order of dismissal will be entered in docket No. 435-12L.