T.C. Memo. 2016-27

UNITED STATES TAX COURT

BONNIE J. ANGLE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent<sup>*</sup>

Docket Nos. 29418-11, 435-12L.          Filed February 22, 2016.

<u>William E. Taggart, Jr.</u>, for petitioner.

<u>Audra M. Dineen</u>, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

LARO, <u>Judge</u>:  Currently before the Court are petitioner's motions under

Rule 161[1] to reconsider our opinion in <u>Angle v. Commissioner</u> (<u>Angle I</u>), T.C.

_____

<sup>*</sup>This opinion supplements our previously filed opinion <u>Angle v.
Commissioner</u>, T.C. Memo. 2015-92.

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

**[\*2]** Memo. 2015-92 and under Rule 162 to vacate the decision and the dismissal entered on May 14, 2015, in docket No. 29418-11 and docket No. 435-12L, respectively. In Angle I we held that petitioner is not entitled to recovery of litigation costs under section 7430. The motions were filed timely on June 11, 2015.

On July 15, 2015, during the pendency of the motions, the U.S. Court of Appeals for the Ninth Circuit--to which these cases would be appealable--reversed and remanded a decision of this Court in Knudsen v. Commissioner (Knudsen II), 793 F.3d 1030 (9th Cir. 2015), rev'g and remanding T.C. Memo. 2013-87 (Knudsen I). Petitioner requested leave of the Court to supplement her pending motions because of the developments in the Knudsen case. We granted the request for leave and instructed the parties to file supplemental briefs addressing the following issues: (1) how Knudsen II affects the decision in the cases herein, if at all, and (2) whether petitioner should be considered a "prevailing party" in view of petitioner's prior filings and the Knudsen II decision.

After considering the arguments made by the parties, we will deny the motions to vacate under Rule 162 for both cases. We will deny the motion to

---

¹(...continued)
Code in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** reconsider under Rule 161 for the case at docket No. 435-12L (collection due process (CDP) case). We will grant the motion to reconsider under Rule 161 for the case at docket No. 29418-11 (innocent spouse case), but for the reasons stated below we will not alter the result of our opinion in Angle I.

Background

We incorporate our findings of fact in Angle I and set forth additional facts below for purposes of this opinion.

On April 15, 1996, petitioner and her now deceased husband, Cloyd F. Angle, filed a joint Federal income tax return for 1995. Petitioner's 1995 tax liability has given rise to no fewer than four cases, three of which we described in detail in our opinion in Angle I.[2]

To briefly reiterate the facts, after the Court resolved the initial deficiency case in Estate of Angle v. Commissioner, T.C. Memo. 2009-227, and entered the appropriate decision, petitioner initiated two separate actions requesting relief from her 1995 Federal income tax liability pursuant to section 6015 (innocent

_____

[2]The fourth case pertained to respondent's collection efforts for petitioner and Mr. Angle's excise tax liability under sec. 1491 for 1995. On August 13, 2012, petitioner filed a petition in this Court seeking review of respondent's collection activities, which was assigned docket No. 20240-12L. On September 12, 2013, the Court entered a stipulated decision setting forth the parties' agreement that respondent's determinations regarding the collection of petitioner's excise tax liability would not be sustained.

**[\*4]** spouse case) and seeking redetermination of the results of a collection due process hearing based on the deficiency case (CDP case). After going through the appropriate administrative procedures, petitioner ended up litigating both the innocent spouse case and the CDP case in this Court. On January 11, 2011, after filing the petition in the innocent spouse case but before filing the petition in the CDP case, petitioner sent the IRS Office of Appeals (Appeals) a letter offering to settle the innocent spouse case for $1,000. Because Appeals did not reply to the offer, it lapsed.

Both cases were scheduled for trial on October 21, 2013. Meanwhile, on the basis of the new information that petitioner provided, respondent determined that the 1995 return was a valid joint return but petitioner was entitled to relief under section 6015(c). On September 27, 2013, respondent informed petitioner of this determination and faxed draft decision documents reflecting a settlement. On September 28, 2013, petitioner acknowledged receipt of the decision documents but refused to sign them because they did not allow litigation costs.

On October 21, 2013, when these cases were called for trial, the parties informed the Court that respondent conceded the innocent spouse case, but respondent maintained that the CDP case was not resolved or rendered moot by the granting of the section 6015 relief. The Court continued the case until

**[*5]** November 18, 2013, to give the parties an opportunity to resolve the remaining issues.

On November 18, 2013, the parties informed the Court that a resolution with respect to the issue of attorney's fees could not be reached. That same day, the Court issued an order directing petitioner to file a motion for costs under section 7430 by January 17, 2014, and the Court denied respondent's motion for summary judgment in the CDP case as moot.

On May 14, 2015, after considering petitioner's motion for litigation costs and respondent's response, we entered an order and decision in docket No. 29418-11 and an order and order of dismissal in docket No. 435-12L, denying the award of litigation costs to petitioner in both cases. On June 11, 2015, petitioner timely filed motions to reconsider our opinion and vacate the decision and the dismissal. During the pendency of the motions we instructed the parties to file supplemental briefs addressing the issues raised by the Court of Appeals in Knudsen II. On October 16, 2015, we instructed petitioner to file supplemental affidavits addressing the issue of her net worth and litigation costs. On November 25, 2015, respondent filed objections to the supplemental affidavits. On December 15, 2015, we granted petitioner's motion for leave to file a response to respondent's

**[\*6]** objections.  Petitioner filed said response in two memoranda on December 15, 2015, and on December 28, 2015.

Discussion

I.      Rule 161 and 162 Motions

The decision to grant a motion to reconsider an opinion or vacate a decision rests within the discretion of the Court.  See Vaughn v. Commissioner, 87 T.C. 164, 166-167 (1986); CWT Farms, Inc. v. Commissioner, 79 T.C. 1054, 1057 (1982), aff'd, 755 F.2d 790 (11th Cir. 1985).  Motions to vacate or reconsider are generally not granted absent a showing of unusual circumstances or substantial error.  See Seiffert v. Commissioner, T.C. Memo. 2014-61, at \*6 (citing Half Tr. v. Commissioner, 62 T.C. 145, 147 (1974), aff'd on this ground, 510 F.2d, 43, 45 n.1 (1st Cir. 1975)); Mitchell v. Commissioner, T.C. Memo. 2013-204, at \*7, aff'd, 775 F.3d 1243 (10th Cir. 2015); Kun v. Commissioner, T.C. Memo. 2004-273, aff'd, 157 F. App'x 971 (9th Cir. 2005).  Motions to reconsider an opinion are generally intended to correct "substantial errors of fact or law and allow[] the introduction of newly discovered evidence that the moving party could not have introduced, by the exercise of due diligence, in the prior proceeding."  Estate of Quick v. Commissioner, 110 T.C. 440, 441-442 (1998).  Motions to vacate a decision are generally not granted absent a showing of unusual circumstances or

**[\*7]** substantial error, including mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, or other reason justifying relief.  Seiffert v. Commissioner, at \*6-\*7 (discussing application of the Federal Rules of Civil Procedure in the context of motions to vacate a decision).

An intervening change in law may also warrant granting a motion to reconsider an opinion or vacate a decision.  See, e.g., Mitchell v. Commissioner, T.C. Memo. 2013-204 (regarding a change in conservation easements law interpretation by a Court of Appeals); Alioto v. Commissioner, T.C. Memo. 2008-185 (regarding a change in law due to congressional change to section 6015).

Where the Court of Appeals to which an appeal lies has decided an issue that is presently before us, we will follow the decision of that court.  Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971). The Court of Appeals for the Ninth Circuit has recently held that whether a concession by the Commissioner should be treated as a settlement for purposes of section 7430 depends on the facts and circumstances of the case and general principles of contract law.  See Knudsen II, 793 F.3d at 1035.  When the Commissioner conceded that case because of the change in the internal litigation strategy after it had been submitted fully stipulated for decision, the concession was not a settlement and the taxpayer was entitled to recover litigation costs.  Id.

**[\*8]** Petitioner argues that the holding in Knudsen II is an intervening change in law that may warrant reconsidering our prior opinion or vacating decisions in these cases. Respondent disagrees.

We relied on the reasoning in Knudsen I, which was later reversed by the Court of Appeals' opinion in Knudsen II, in denying the award of attorney's fees and costs in Angle I. Under Golsen, we follow the holding of the Court of Appeals in Knudsen II because it discusses the same issue that we are dealing with here: whether a unilateral concession by the Commissioner should be treated as a settlement. Thus, Knudsen II represents an intervening change in law and warrants reconsideration of certain portions of our opinion in Angle I.

The discussion of Knudsen I and Knudsen II, however, is relevant to only one of the consolidated cases, the innocent spouse case. Because we found in Angle I that no qualifying offer has been made in the CDP case, Knudsen II does not affect our analysis and conclusions as to the CDP case, and we will deny petitioner's motions to reconsider that part of the opinion in Angle I and to vacate the related decision.[3] Under Golsen, we, however, must consider the issue of

---

[3]Petitioner seems to raise the issue that she substantially prevailed for the purposes of sec. 7430(c)(4)(A) for the first time in the reply to response to second supplemental affidavit of William E. Taggart, Jr., filed on December 28, 2015. We note that motions to reconsider or vacate are not an appropriate forum for

(continued...)

**[*9]** whether the holding in <u>Knudsen II</u> affects, if at all, the innocent spouse case. Thus, we will grant the motion to reconsider our opinion in the innocent spouse case for this limited purpose. For the reasons stated below, granting the motion to reconsider does not alter the result of <u>Angle I</u>.

Because petitioner did not provide us with substantial proof that there are reasons justifying vacating our prior decision such as those enumerated in <u>Seiffert</u>, and our reconsideration of <u>Angle I</u> as related to the innocent spouse case does not lead us to different results, we will deny petitioner's motion to vacate the decision related to the innocent spouse case.

## II. <u>Legal Standard for Reasonable Litigation Costs Award</u>

Under section 7430(a), a prevailing taxpayer in a court proceeding against the United States may be awarded "reasonable litigation costs incurred in connection with such court proceeding." The decision whether to award attorney's fees under section 7430 is within a trial court's sound discretion. <u>See</u> <u>Pac. Fisheries, Inc. v. United States</u>, 484 F.3d 1103, 1106 n.2 (9th Cir. 2007);

---

[3](...continued)
advancing new legal theories to reach the end result desired by the movant. <u>See</u> <u>Estate of Quick v. Commissioner</u>, 110 T.C. 440, 441-442 (1998). Petitioner's argument is untimely, and thus we will not consider it.

**[\*10]** <u>Huffman v. Commissioner</u>, 978 F.2d 1139, 1143 (9th Cir. 1992), <u>aff'g in part, rev'g in part</u> T.C. Memo. 1991-144.

In order for this Court to award reasonable litigation costs under section 7430, certain requirements must be met.  The record must show the following:

(1)  The moving party filed a timely motion for reasonable litigation costs. Rule 231(a).  We excused petitioner's minor delay in filing the motion for reasonable litigation costs, as discussed in <u>Angle I</u>.

(2)  The moving party did not unreasonably protract the court proceedings. Sec. 7430(b)(3).

(3)  The moving party exhausted any administrative remedies available to him or her within the IRS.  Sec. 7430(b)(1).

(4)  The moving party has a net worth that did not exceed $2 million at the time the petition was filed in the case.  Sec. 7430(c)(4)(A)(ii).

(5)  The moving party is a prevailing party in the Court proceeding.  Sec. 7430(a), (c)(4)(A), (B), (E).

(6)  The amount of costs claimed is reasonable.  Sec. 7430(a), (c)(1).

These six requirements are in the conjunctive; each requirement must be met before this Court may order an award of litigation costs to a taxpayer under section 7430.  <u>See</u> <u>Beecroft v. Commissioner</u>, T.C. Memo. 1997-23, slip op. at 11

[*11] (citing <u>Minahan v. Commissioner</u>, 88 T.C. 492, 497 (1987)). Except as provided in section 7430(c)(4)(B), the taxpayer bears the burden of proving that he or she meets each of the requirements of section 7430. Rule 232(e). Failure to meet any of the requirements of section 7430 will preclude an award of costs. <u>Minahan v. Commissioner</u>, 88 T.C. at 497.

Respondent conceded that petitioner complied with requirements set out in items (2) and (3) above. Respondent, however, disagrees that petitioner met the remaining statutory requirements. For the reasons set forth below, we agree that petitioner failed to meet the net worth requirement. Because petitioner failed to meet the net worth requirement, we deny the award of litigation costs related to the innocent spouse case. <u>See id.</u> (stating that failure to meet any of the requirements of section 7430 precludes an award of costs).

III. <u>Prevailing Party Under the Qualifying Offer Rule and Knudsen</u>

A. <u>Qualified Offer in the Innocent Spouse Case</u>

Petitioner argues that she is entitled to recover litigation costs under the qualified offer rule, <u>see</u> sec. 7430(c)(4)(E), and (g), because her January 11, 2011, letter was a qualified offer.

[*12] Section 7430(c)(4)(E)(i) provides:

> A party to a court proceeding * * * shall be treated as the prevailing party if the liability of the taxpayer pursuant to the judgment in the proceeding (determined without regard to interest) is equal to or less than the liability of the taxpayer which would have been so determined if the United States had accepted a qualified offer of the party [as defined] under subsection (g).

Under the qualified offer rule of section 7430(c)(4)(E) and (g), a taxpayer may be deemed to be a prevailing party regardless of whether the taxpayer substantially prevailed in the proceeding or of whether the Commissioner's position in the proceeding was substantially justified. Haas & Assocs. Accountancy Corp. v. Commissioner, 117 T.C. 48, 59 (2001), aff'd, 55 F. App'x 476 (9th Cir. 2003).

In Angle I we held that petitioner's January 11, 2011, letter is a qualified offer with respect to the innocent spouse case but no qualified offer has been made in the CDP case. Angle I, at *9-*11. Thus, petitioner may be entitled to reasonable litigation costs incurred in connection with the innocent spouse case if all other requirements for being a prevailing party are satisfied.

B.      Settlement Exception to the Qualified Offer Rule and Knudsen

Where the taxpayer makes a qualified offer under section 7430(g), the qualified offer rule does not apply to "any judgment issued pursuant to a

[*13] settlement".  Sec. 7430(c)(4)(E)(ii)(I); see also sec. 301.7430-7(a), Proced. & Admin. Regs. ("An award of reasonable administrative and litigation costs under the qualified offer rule only includes those costs * * * attributable to the adjustments * * * that were included in the court's judgment other than by reason of settlement.").

Whether a concession constitutes a settlement under section 7430(c)(4)(E)(ii)(I) depends on whether, under the facts of the case, the concession can be construed as a contract to settle between the parties.  Knudsen II, 793 F.3d at 1035.  In the Ninth Circuit, courts consider timing of the concession as well as the usual elements of a valid contract such as offer, acceptance, and consideration.  Id.

In Knudsen II, 793 F.3d at 1035, the Court of Appeals for the Ninth Circuit held that a unilateral concession is not a settlement within the meaning of section 7430 when the Commissioner conceded as a result of a change in internal policies and when there was no evidence of negotiations regarding a settlement.  The Commissioner informed the taxpayer that he would concede the case after the case had been submitted fully stipulated but more than a month before the filing deadline for submitting opening briefs in the case.  Id. at 1033.

**[\*14]** In another similar case, Estate of Lippitz v. Commissioner, T.C. Memo. 2007-293, this Court has held that when the Commissioner waited to concede the case until after the taxpayer had actively litigated to the point of filing a dispositive motion, the concession was not a settlement. In Estate of Lippitz v. Commissioner, T.C. Memo. 2007-293, the Commissioner denied the taxpayer's right to relief from joint and several liability under section 6015 despite the prior administrative determination that the taxpayer was entitled thereto. After the Commissioner refused the taxpayer's qualified offer, the taxpayer moved for partial summary judgment, prompting the Commissioner to concede that the taxpayer was entitled to the requested relief.

In both Knudsen II and Estate of Lippitz the courts considered the timing of the concession. Knudsen II, 793 F.3d at 1035 (citing Estate of Lippitz v. Commissioner, T.C. Memo. 2007-293). Both courts did not believe that Congress intended to allow the Commissioner to benefit from the settlement exception of section 7430(c)(4)(E) after waiting until just before the resolution of a dispositive motion or the end of a trial to concede a matter. Id. The underlying purpose of the qualified offer rule "is to encourage settlements by imposing litigation costs on the party not willing to settle." Id. (quoting Gladden v. Commissioner, 120 T.C. 446, 450 (2003)).

[*15] Petitioner argues that Knudsen II is an intervening authority warranting a change in the reasoning and conclusions of our prior opinion in Angle I. Petitioner made a qualifying offer for the innocent spouse case at the very beginning of the offer period. Respondent did not accept the offer, and it expired. After that, respondent continued to pursue his litigation strategy and ultimately came to the conclusion that he was ready to concede the innocent spouse case. Similar to the facts in the Knudsen case, less than a month before the scheduled trial date respondent informed petitioner that he intended to concede the innocent spouse case.

Respondent attempts to distinguish this case from the Knudsen case on the basis that petitioner made an implicit offer to settle by making herself available for depositions and providing information pursuant to respondent's requests, which respondent accepted by conceding. Respondent argues that, unlike in the Knudsen case, where the concession was based on the institutional-level change of litigation strategy, the concession here was in response to petitioner's providing more information on her case.

We find respondent's argument unpersuasive. The litigation process is inherently adversarial, but it necessarily involves exchange of information between the parties. We are reluctant to hold that whenever a party cooperates in

**[\*16]** this process, it is making an offer to settle and loses the right to litigation costs. Respondent's argument suggests that taxpayers can be entitled to litigation costs only when the Commissioner decides to make an institutional change in his policies or abandons a prior litigation strategy. We do not think this is the result intended by Congress.

Respondent also distinguishes the current case from Estate of Lippitz, where the Commissioner chose to litigate the section 6015 relief issue even after the Internal Revenue Service Cincinnati Centralized Innocent Spouse Operations unit (CCISO) recommended that such relief should be granted. This factual distinction would be important if petitioner argued that respondent's position was unjustified at the time the case was commenced. This is not the case here. Petitioner argues only that she is a prevailing party under the qualified offer rule. This rule operates regardless of whether the taxpayer substantially prevailed in the proceeding or of whether the position of the Commissioner in the proceeding was substantially justified. See Haas & Assocs. Accountancy Corp. v. Commissioner, 117 T.C. at 59.

When respondent sent the stipulation documents to petitioner in September 2013, she refused to sign them. In later filings respondent stated that he conceded the issue of innocent spouse relief under section 6015. Moreover, even after the

[*17] concession, respondent continued to assert that the CDP case was not moot up until the trial in November 2013.

In terms of contract law analysis, respondent's proposed contract terms--conceding only the innocent spouse case--were rejected by petitioner on September 28, 2013. Petitioner's counteroffer--that respondent should concede both the CDP and the innocent spouse case--was rejected by respondent in his subsequent filings. Under the facts of this case, we conclude that respondent's concession in the innocent spouse case does not constitute a settlement under section 7430(c)(4)(E)(ii)(I). There was no manifestation of mutual assent and exchange of consideration pursuant to a bargain between the parties. Thus, there was no settlement, and petitioner may qualify as the prevailing party with respect to the innocent spouse case under the qualifying offer rule as interpreted in Knudsen II.

IV. Net Worth Requirement

Section 7430(c)(4)(A)(ii) incorporates the net worth requirement of 28 U.S.C. sec. 2412(d)(1)(B) in the definition of a "prevailing party." To meet the net worth requirement, an individual's net worth must not exceed $2 million at the time the petition was filed. Sec. 7430(c)(4)(A)(ii); 28 U.S.C. sec. 2412(d)(1)(B).

[*18] Rule 231(b)(5) requires a statement, supported by an affidavit executed by the moving party (and not counsel therefor), that the moving party meets the net worth requirement. If a taxpayer fails to sufficiently establish net worth and the Commissioner challenges whether the taxpayer has met the net worth requirement, the taxpayer must provide additional evidence. Park v. Commissioner, T.C. Memo. 2002-232; see also Estate of Hubberd v. Commissioner, 99 T.C. 335, 341 (1992); Dixson Int'l Serv. Corp. v. Commissioner, 94 T.C. 708, 719 (1990). In Dixson, this Court denied the award of litigation costs when the taxpayers failed to provide adequate proof of their net worth when they were put on notice that the Commissioner had specifically objected to granting the motion for that reason.

Petitioner made the required statement and filed a supplemental affidavit providing a list and the values of her assets as of the date she filed the petition in the innocent spouse case. Petitioner stated that her net worth at that time was $1,586,994. Respondent points out that petitioner did not include certain assets in the calculation, including shareholder loans to foreign entities wholly owned by her (Canadian corporations)[4] and cash deposited in foreign bank accounts.

---

[4]The names of the corporations are 482019 British Columbia LTD and Bonn & Graff LTD.

**[*19]** Respondent argues that if the omitted items are added into the calculation, petitioner fails to meet the net worth requirement. We agree with respondent.

Respondent first raised the issue of net worth in the response to petitioner's motion for reasonable litigation or administrative costs filed on March 20, 2014. Petitioner failed to substantively address the issue of net worth in the pre-Angle I filings. This alone would be sufficient for the Court to deny petitioner's motion under Dixson. Petitioner first addressed the concerns raised by respondent in the first supplement to affidavit of William E. Taggart, Jr., in support of the motion for reasonable litigation or administrative costs filed on November 13, 2015. In his response to that first supplement to affidavit, respondent pointed out that the net worth calculations omitted loans by petitioner to the Canadian corporations totaling $3,508,009.47.[5] Petitioner argues that these loans were worthless at the time the petition in the innocent spouse case was filed because the corporations to which petitioner made loans did not have sufficient assets to repay them. We note

_____

[5]Financial statements of 482019 British Columbia LTD for 2011 show that petitioner lent the company 3,121,294 Canadian dollars (CAD). Financial statements of Bonn & Graff LTD for 2011 show that petitioner lent the company 455,576 CAD. After converting these amounts to U.S. dollars at the rates specified in the respective financial statements, we arrive at the total of $3,508,009.47.

**[\*20]** that petitioner did not introduce any evidence that she treated these loans as worthless on her tax returns for 2011 or any prior years.

This Court has previously held that net worth, for purposes of the Equal Access to Justice Act, 28 U.S.C. sec. 2412(d)(2)(B) (1994), as incorporated by section 7430(c)(4)(A)(iii), is determined on the basis of the cost of acquisition under generally accepted accounting principles (GAAP) rather than the fair market value of assets. Swanson v. Commissioner, 106 T.C. 76, 96 (1996); see also H.R. Rept. No. 96-1418, 96th Cong., 2d Sess. 15 (1980); Am. Pac. Concrete Pipe Co. v. NLRB, 788 F.2d 586, 591 (9th Cir. 1986) (holding that generally accepted accounting principles apply in calculation of net worth under 28 U.S.C. sec. 2412(d)(2)(B) and allowing the taking into account of depreciation).

Notes receivable are assets under GAAP. See U.S. GAAP Codification of Accounting Standards, Topics 310. The cost of acquisition of a note receivable exchanged for cash is the amount of cash received in exchange for the note. Id., Topic 310-10-30-2. If the interest on the note is unstated, it is recorded in the books as having value in an amount that reasonably approximates the fair value of the note. Id., Topic 310-10-30-5.

The parties do not argue that petitioner's loans to the Canadian corporations are in fact an investment in equity. Petitioner maintains that the loans are bona

**[*21]** fide business loans. Petitioner also does not argue that the notes were exchanged for goods or services. Thus, we conclude that the notes were exchanged for cash loans from petitioner to the Canadian corporations. Further, because the notes did not state interest or a maturity date, we conclude that they were initially recorded on the books at values that reasonably approximated the fair values of the notes. Because the Canadian corporations did not make any payments on the loans, the values of the notes remained the same at least until the filing of petitioner's petition in the innocent spouse case. Thus, the face values of the loans reported on the Canadian corporations' books represent acquisition values for the notes receivable held by petitioner.

We next address petitioner's argument that she did not have to report the loans as assets because they had become worthless by the time she filed the petition in the innocent spouse case. Petitioner argues that the amounts she reported as the values of her interest in the Canadian corporations represent the value of her equity and debt investments combined. Because the corporations did not have sufficient assets to repay the debts to petitioner on demand, she treated these loans as worthless in calculating her net worth. Financial difficulties of a debtor, however, do not always indicate worthlessness of a debt. See Prod. Steel, Inc. v. Commissioner, T.C. Memo. 1979-361. Petitioner did not introduce any

[*22] evidence besides corporate financial statements that would give us any basis to conclude that petitioner's loans were indeed worthless and should be disregarded in the computation of petitioner's net worth. Petitioner also did not produce any evidence that she and the debtor corporations treated the loans as worthless for tax or any other purposes for 2011 or prior tax years.[6] To the contrary, in 2011 both Canadian corporations still listed the loans made by petitioner as outstanding.

Thus, we conclude that the costs of acquisition for the notes representing the loans made by petitioner equal the values of the loans reported on the books of the Canadian corporations. Contrary to petitioner's assertion, there is no evidence that the loans were indeed worthless at the time of filing the petition in the innocent spouse case. On the basis of the notes alone, petitioner's net worth far exceeds the $2 million limit set by the Equal Access to Justice Act, 28 U.S.C. sec. 2412(d)(2)(B), as incorporated by section 7430(c)(4)(A)(iii).

---

[6] It is not likely petitioner could have claimed a deduction for worthless securities because the loans did not satisfy the requirements of sec. 165(g)(2)(c) as they were not in registered form and did not have any interest stated. It is also not likely petitioner could have claimed a deduction for worthless debt under sec. 166 because there is no indication she tried to collect on the debts at all. See Brewer v. Commissioner, T.C. Memo. 1992-530.

**[\*23]** Next, respondent also introduced evidence showing that petitioner had two bank accounts with the Bank of Montreal in 2011.  The maximum value of these accounts according to the Report of Foreign Bank and Financial Accounts (FBAR) petitioner filed for the 2011 tax year totaled $360,237.  We do not express any opinion on whether the maximum value of bank accounts reported on the FBAR fairly represented the amounts in these accounts as of December 23, 2011, the filing date of the petition in the innocent spouse case.  We note, however, that this evidence casts serious doubt on the veracity of the information petitioner provided to prove she met the net worth requirements.

Under the circumstances, we find that petitioner's net worth exceeded the $2 million statutory limit.  Thus, petitioner's motion for litigation or administrative costs in the innocent spouse case must be denied.  See Minahan v. Commissioner, 88 T.C. at 497 (stating that failure to meet any of the requirements of section 7430 precludes an award of costs).

V.    Conclusion

In reaching our holdings, we have considered all arguments made, and to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

**[\*24]**  To reflect the foregoing,

<u>Appropriate orders will be entered</u>.
